## SUPREME COURT.

### Lewis agt. Kendall.

An answer to a complaint for slander, in alleging facts and circumstances in justification of the words alleged to have been spoken, is bad on demurrer, where such facts and circumstances alleged do not constitute a criminal offence.

Thus, the answer alleged, in substance, that the defendant would prove on the trial, that the plaintiff was in the service of the Syracuse and Utica Rail Road Company as baggage man, or servant, being and running upon the cars from Syracuse to Utica; and that the defendant gave the plaintiff an open, unsealed letter containing $12 in money addressed to A—— B——, Utica, with a tin can to get some oil for defendant, and gave to plaintiff two shillings for his trouble; that when plaintiff delivered the letter in Utica it was found to contain only $10; and charged that the plaintiff fraudulently embezzled $2; and that the words charged to have been spoken in the complaint, if ever spoken, were spoken in reference to said embezzlement, &c.

*Held*, that if the statement of facts as alleged, were proved, it would not constitute the crime of embezzlement, as the plaintiff was not the clerk or servant of the defendant within the meaning of the statute. Nor did the plaintiff receive the money as the officer, agent, clerk or servant of the Rail Road Company, or by virtue of his employment by them, at least, no allegation of that kind being in the answer; the most that could be said of it, was, that the plaintiff acted as the special agent of the defendant; and the facts stated constituted a breach of trust, and nothing more.

Besides, these statements in the answer is bad pleading. The answer first denies that the defendant ever spoke any of the words contained in the complaint, and then says, if, however, the plaintiff prove he did, the defendant will then prove certain things (as stated). It should be certain; and every material and traversable fact should be alleged, and not left to inference. It should be direct and positive.

The defendant, in his answer, should either confess and avoid the action made by the complaint, or should deny or traverse all the material facts in it; and must state facts, not arguments.

*Onondaga Special Term,* 1850. This is an action of slander, and the case comes before the court on a demurrer to the answer. The answer in the first place denies all the material allegations in the complaint. In short, the answer denies the speaking of any of the words in the complaint, and then it says that in case the said plaintiff shall, notwithstanding, prove on the trial of this cause the speaking and publishing of all or any of the words mentioned in the complaint, then, and in that case, the defendant will prove on the trial in justification thereof, the following facts and circumstances, the substance of which is that the plaintiff was in

some capacity in the service of the Utica and Syracuse Rail Road Company, as a baggage man or servant, being and running upon the cars from Syracuse to Utica; and that the defendant gave the plaintiff at Canastota, a small village through which said cars run, an open unsealed letter containing $12 in money addressed to Wm. C. Butler, Utica, with a tin can to get some oil for defendant. That when plaintiff delivered said letter to said Butler in Utica, it was found to contain only $10; and plaintiff claimed that there was only $10 enclosed in the letter; and the answer charges that the plaintiff fraudulently embezzled $2 of the said $12; and that the words in the complaint charged to have been spoken by defendant were, if ever spoken, spoken with reference to said embezzlement, &c. The cause was decided at the Onondaga special term, 1850.

D. D. HILLIS, *for Plaintiff.*

T. BARLOW, *for Defendant*

MASON, Justice.—This cause comes before the court on a demurrer. I propose in the first place to consider whether the matters stated in the answer of the defendant would constitute a defence if they were properly pleaded; or, in other words, whether the converting of two dollars of the twelve thus intrusted to the plaintiff in the manner and under the circumstances stated in the answer of the defendant, constitutes a criminal offence. If it is a criminal offence it is embezzlement, and falls within the 59th section 2 R. S. page 678, which provides, in substance, that if any clerk or servant of any private person shall embezzle or convert to his own use, or take or make way with, or secrete with intent to embezzle or to convert to his own use, without the assent of his master or employer, any money, goods, &c. belonging to any other person, which shall have come into his possession or under his care by virtue of his employment, he shall upon conviction be punished, &c. The answer sets up, in short, that the plaintiff was in some capacity in the service of the Syracuse and Utica Rail Road Company as a baggage man, or servant, and running or being upon said rail road and cars of said

company from Syracuse to Utica, through the village of Cana-stota in the town of Lenox, to Utica and back; and he, the said Lewis, so being in such service, the said defendant did before the alleged speaking of the said words, and on or about the 10th day of November, at Canastota aforesaid, deliver to the said Lewis in a written unsealed letter, containing therein $12 in money in bank bills, to deliver to Wm. C. Butler in the city of Utica, to whom the said letter was addressed, to be applied by said Butler on account of said defendant, for the sale to defendant of camphene gas, and that defendant at the same time delivered to the plaintiff a tin can, to take to said Butler, for the purpose of receiving therein a quantity of camphene gas for said defendant, to be brought back to him on said cars, and that defendant at the time gave plaintiff two shillings for his trouble; and the answer charges the plaintiff with embezzling two dollars of the $12 thus delivered to him. It appears to me that the statute was not intended to embrace such a case. Our statute is not as broad as the English statute, and seems to me, taking the whole statute together was only intended to apply to persons in the ordinary situation of clerks or servants having a master to whom they are accountable for the discharge of the duties of their situation; and that the casually procuring a person to receive money in a single message and pay it out, or to receive it, will not constitute a case of a servant's receiving such money by virtue of his employment as servant or clerk, and consequently is not within the statute. Roscoe in his *Criminal Ev. page* 399, edition of 1840, says the casually procuring a person to receive a sum of money will not render that person " a person employed for the purpose, or in the capacity of clerk or servant."

In the case of Rex vs. Freeman (5 *Carr. & P.* 534, and 24th *Eng. Com. Law*, 444), which was a case where the prisoner had worked for the prosecutor, sometimes as a regular laborer and sometimes as a roadsman, but at the time in question, not being at all in the prosecutor's service, he was sent by the prosecutor to get a check cashed at a banker's, for doing which he was to be paid sixpence. He got the cash and made off. The court

held it no embezzlement, as the prisoner was not the servant of the prosecutor within the meaning of the statute. This case was decided in 1833, and is cited with approbation by Roscoe in his *Criminal Evidence*, page 399. The same doctrine is laid down in Ray vs. Moe, C. C. 259; and Barber in his *Criminal Treatise*, lays down the rule in the following language: "Nor is an embezzlement by one who is neither clerk nor servant, or in any way under the control of the person by whom he is in a single instance only requested to receive money, punishable under this act" (*Barb. Crim. Treat.* 144). I know there are cases in England which hold a contrary doctrine. In one case it was held a man was sufficiently a servant within the English statute, although he is only occasionally employed when he has nothing else; and there are cases which hold that it is sufficient if he was employed to receive the money he embezzled; although receiving money may not be in his usual employment, and although it was the only instance in which he was so employed (Rex vs. Spencer, *R. & R. C. C.* 299; 2 *Russ. C. & M.* 210; Rex vs. Hughs, *M. C. C. R.* 370. See also 1 *Harr. Digest*, 20 35, and 20 36, and cases there referred to). I am free to confess that I have not been able to satisfy myself, on a careful examination of the English statute, that it embraced such cases, or was ever intended to; and it is a familiar rule that criminal statutes should receive a strict construction.

Our statute, however, has not received so extended a construction, and I trust will not. It was said by Mr. Spencer, who was one of the revisers that framed our statute, that a stage driver entrusted by his employer to carry money from one place to another, was not a servant within the meaning of the statute (The People vs. Levaron, 10 *Wend.* 298). The court, however, held such driver to be a servant within the meaning of the statute; and so it was held in the case of The People vs. Dutton, that a bar-keeper entrusted to carry a letter to and from the post office, who fraudulently converts to his own use a letter enclosing money, given him to carry to the post office, is guilty of embezzlement under the statute (15 *W. R.* 581).

It will be seen, on looking at the statute under consideration,

that it only embraces the case of a clerk or servant of a private person, while it embraces the case of any officer, agent, clerk or servant of any incorporated company.

Can it be maintained then that Lewis was the servant of the defendant in this instance, within the meaning of this statute? I do not think it can. The answer alleges that he was in some capacity in the service of the Syracuse and Utica Rail Road Company as a baggage man, or servant, being and running upon the cars of said company from Syracuse to Utica, and the most that can be said of the defendant's employment is that he constitutes him his special agent to carry the letter and money to Utica and deliver it to Butler and get some camphene gas in his can and bring it back to him, the defendant, and upon the allegations contained in this answer he continued the servant of the company, and became nothing more than the special agent of the defendant in this transaction; and it seems to me it would be a perversion of language to call him a hired servant of the defendant in such a case. The question arises then, did the plaintiff receive this money as the officer, agent, clerk or servant of the rail road company, and did the money come into his possession, or under his care, by virtue of such employment or office which he held for the said rail road company. I have not been able to discover any averments or allegation in the defendant's answer which would show that it did.

There is nothing in the pleadings showing that the plaintiff's employment as servant for this company was to do errands of this kind, or carry money for individuals in this way. I infer on the contrary, from the pleadings, that such was not his employment by the company. If it was not, then most clearly the case is not within the statute; and it is sufficient for our purpose that such is not alleged to be his employment by the company in the defendant's answer (2 *R. S.* 678, § 59; 10 *Wend.* 298; Rex vs. Snowley, 4 *Carr. & Payne,* 390; 15 *Wend.* 581; *Common Law,* 436; Rex vs. Hawtin, 7 *Carr. & Payne,* 281; 32 *Eng. Common Law,* 510; *Russel's Criminal Evidence,* 393 and 394).

Roscoe cites several adjudged cases in illustration of the rule

Lewis agt. Kendall.

above laid down.   " Thus" he says,  " a servant or a carrier employed to look after goods, but not intrusted with the receipt of money, is not within the statute, for it must be within the course of the servant's employment to receive the money in order to render him liable."   I think we have shown that the case in the defendant's answer does not come within the statute, and the answer therefore refers the speaking of the words to a transaction not criminal; constituting in short a breach of trust and nothing more.

The defendant in his anwer has denied the speaking of all the words contained in the complaint, and then the answer states as follows:  " and the defendant further answering says that in case the said plaintiff shall, notwithstanding, prove upon the trial of this cause the speaking and publishing by the said defendant of all or any of the words mentioned in the said complaint, then and in that case this defendant will prove on said trial in justification thereof, the following facts and circumstances, that is;" and then setting up a justification or statement of facts which we have held if proved, would show nothing more than that the words charged upon the complainant by the defendant, referred to a matter not criminal and consequently were not slanderous.   The plaintiff has demurred to this portion of the answer as well as that part which insists on the same statement in the answer in mitigation and reduction of damages; for the reason that, that portion of the answer is not positive, but is made to depend upon a contingency;  and also for the reason that the defendant does not allege therein that the plaintiff committed the act which he says he will prove in justification, but merely says he will prove on the trial, &c.   Nor does he allege the truth of what he expects to prove; and thirdly, for the reason that the answer does not contain any allegation upon which the plaintiff can take issue;  and the same causes of demurrer are assigned to that part of the answer which insists upon the same fact in mitigation or in reduction of damages, and there is also the further cause of demurrer assigned to the answer, to wit: that the defendant alleges no acts to have been committed by the plaintiff which could authorize him to

speak and publish the said words of and concerning him; and also that the answer states conclusions of law instead of facts.

I know that the present code of procedure looks with great liberality upon the pleadings of the parties, and requires the courts to cast broadly the mantle of charity over their defects (*Code*, §59, *Laws of* 1849, *p.* 648). The Code, however, contemplates that the pleadings should be framed with some regard to truth (§1 *Report of the Commissioners, p.* 153), and the framers of the Code intended that the pleadings of the parties should contain a clear and distinct statement constitutiug either the cause of action or the defence, and in concise language, and without repetition, and that each statement should be pointed and distinct, that in case it be not answered or replied to on the other side, that it would require no argument to satisfy the judicial mind what was admitted by the omission to answer or reply; or in case of a demurrer, what facts were admitted (see *Code*, sections 142, 149, 150, 153, 160 and 168). The courts should require the pleading to be so framed that the facts stated therein will be admitted if they are not answered; and while the 150th section allows the defendant to plead as many defences as he shall have, it requires that each defence be separately stated, and that it refer to the cause of action it is intended to answer, &c.; and the pleadings should contain a statement of the facts constituting the cause of action or defence in ordinary and concise language and without repetition, and so framed that the common mind will know what is intended; and it is not permitted to a party to draw his pleading with a detailed statement of the evidence which establish the facts. If the courts would require the parties to conform their pleadings to these rules, they would not find themselves so often puzzled to know what the issues in the causes were, which they are called upon to try, and I am satisfied the courts will have to enforce these rules with some rigor or the present system of pleadings will never answer the purposes for which it was intended.

The portion of the answer demurred to does not pretend to be a statement of facts.

The answer has first denied that the defendant ever spoke any of the words contained in the complaint, and then says, if, however, the plaintiff proves he did, the defendant will then prove certain things.   The former practice required the plea to be certain (4 *Taunt. R.* 34), and every material and traversable fact must be alleged and not left to inference (7 *John.* 80; *Gra. Pr.* 239); a plea must be direct and positive (*Gra. Pr.* 239).

The system of pleading under the present Code, I have no doubt contemplated that the defendant, in his answer should either confess and avoid the action made by the complaint, or that he should deny or traverse all the material facts contained in the complaint, and he must state facts and not arguments.

This the defendant was required to do in equity, under the former system (*Story's Eq. Pl. p.* 801, § 852).   Applying the rules above laid down to the case under consideration, I do not think we can do less than hold the demurrer in this cause to be well taken, and give the plaintiff judgment upon the demurrer, with leave to the defendant to amend his answer on the payment of costs.