EDWARD A. FILLEY, and others, Appellants, *vs.* SAM'L M. REGISTER, and others, Respondents.

APPEAL FROM THE DISTRICT COURT OF WASHINGTON COUNTY.

It is a general principle that a debtor cannot grant away his property to his family or a stranger, by a voluntary conveyance, so as to interfere with the rights of his creditors; but a voluntary conveyance will not be held to be void simply from the fact that the grantor was, at the time of executing it, *indebted*, without regard to the relation his debts bear to his property reserved, no fraud appearing to have entered into the transaction. Evidence may be given to the jury, as to the existence of debts against the grantor, and other circumstances showing that his financial condition at the time he executed the conveyance, would not permit it to stand, in justice to his creditors, or, to establish an actual intent to defraud; either of which positions being established, the deed would fall under the operation of the Statute of frauds.

When the Plaintiff makes an issue upon the fact that actual fraud entered into a voluntary conveyance, the Defendants have a full and perfect right to prove any fact or circumstance which will in any way tend to avoid the actual fraud, and prove the real intention under which they acted in making the deed.

Points and authorities of the Appellants:

Upon the trial of the case, the Defendants offered (and the court allowed under Plaintiff's objection,) evidence tending to show that the property in question was actually intended to be conveyed to Mrs. Burkleo in 1849, although conveyed by mistake to her husband; and that in all subsequent transactions relating thereto, it was considered as her property. The exceptions to this evidence constitute the errors assigned in the 1st, 2d, 3d and 4th points.

The 5th and 6th points are in substance that the court erred in allowing evidence offered by Defendants as to the condition of the business of Burkleo and Mower on the 1st of July, 1856. Authorities cited, *Hanson vs. Buckner*, 4 *Dana*, 251; *Stiles vs. Lightfoot*, 26 *Ala.* 443.

*Seventh.*—The court below erred upon the trial in receiving subject to the same objection specified in the 1st and 2d points herein, the testimony of the witness Susanna Burkleo (*folios* 280, 281 and 288,) as to the acts and conversation between herself and husband about the Stillwater property and the deed therefor, at the time of receiving the deed, May 1st, 1849, and about the control of the property since the making

of the deed to the time of the transfer to Greeley. *See the return, folios as above.*

*Eighth.*—The court below erred upon the trial in overruling the Plaintiffs' objection to the following question put by the Defendants' counsel to the witness, Susanna Burkleo, (*folio* 287): "State whether you knew at the time any thing about your husband's affairs with Burkleo & Mower."

*Ninth.*—The court below erred upon the trial in sustaining the Defendant's objection to Plaintiff's offer (*folio* 332): "To show that in 1856, in or about the month of August, the property of Burkleo & Mower was attached in the city of St. Louis for debts due the firm of Brown & Co., for goods bought prior to 1st July, 1856, to show that they were under the necessity of obtaining assistance to get along in their business at that time."

*Tenth.*—The court below erred upon the trial in sustaining the Defendants' objection to the following question put by Plaintiff's counsel to the witness, Wm. H. Mower (*folio* 334): "What hindrance or obstruction did you meet with."

*Eleventh.*—The court below erred upon the trial in denying the Plaintiffs' motion to strike out all that part of the testimony of Susanna Burkleo, relating to a conversation had between Mr. and Mrs. Burkleo in the spring of 1849, at Marine, at the time Mr. Burkleo handed to Mrs. Burkleo the deed of lots one and thirty-two, in block twenty-nine, in Stillwater, concerning the deed and the property described in the deed, (*folios* 352 *and* 353).

*Twelfth.*—The court below erred upon the trial in denying the Plaintiffs' request to charge the jury, "That the law will not permit a man engaged in a hazardous business, where large credits are essential to the continuance of the business, and after having contracted large debts in such business, to withdraw from the reach of his creditors large amounts of his most valuable and substantial or available property, by settling it upon his family." *Folios* 367 *and* 368.

*Thirteenth.*—The court below erred upon the trial in denying the Plaintiffs' request to charge the jury, "That where a conveyance is made by a debtor engaged in trade, and largely indebted at the time, and unable to meet promptly his liabili-

ties, the law declares such conveyance void as to existing creditors at the time, even though there be no fraudulent intent on the part of the grantor." *Folios* 368 *and* 369.)

*Fourteenth.*—The court below erred upon the trial in denying the Plaintiffs' request to charge the jury, " That if the jury find from the evidence that Samuel Burkleo, as a member of the firm of Burkleo & Mower, was indebted to the Plaintiffs on the 1st day of July, 1856, on account of debts contracted by Burkleo & Mower, in the course of their mercantile and lumbering business, the settlement of the property on Mrs. Burkleo on that day, described in the deed from Elam Greeley of that date, was a fraud in law as to the Plaintiffs in this action." *Folios* 372 *and* 373.

*Fifteenth.*—The court below erred upon the trial in denying the Plaintiffs' request to charge the jury, " That if the jury find that the subsisting indebtedness of Burkleo & Mower, at the date of the conveyance to Mrs. Burkleo, July 1st, 1856, was largely disproportionate to their capital invested in their business, the deed was voluntary and void as to these Plaintiffs." *Folios* 373 *and* 374.

*Sixteenth.*—That the evidence was insufficient to justify the verdict.

*Seventeenth.*—That the verdict was against law.

*Eighteenth.*—That where incompetent, irrelevant or immaterial evidence is admitted against objection, and a verdict is found against the party objecting, a new trial will be granted, unless the court can see from the whole case that another trial must necessarily result in the same way.

*Carper vs. Barnes,* 4 *Sneed* (*Tenn.*) 450; *Sexton vs. Wheaton,* 1 *American Leading cases,* 17, *and notes and cases there cited; Thompson vs. Dougherty,* 12 *Serg. & Rawle,* 448; *Gilman vs. Bank of North America and Lessee of Ridgway vs. Underwood, Whart. Dig.* 291; *Reed vs. Livingston,* 8 *Johns. Ch.* 372; *Anderson vs. Roberts,* 18 *Johns.* 526; 1 *Story's Eq.* (*6th Ed.*) *Sec.* 350 *to* 366, *and notes and cases there cited;* 2 *Kents' Com.* (*8th Ed.*) *original paging,* 440 *to* 443, *and notes and cases there cited;* 2 *Hilliard's Real Property,* 450, *Sec.* 16, *note* 3, *and cases there cited; O'Daniel vs. Crawford,* 4 *Dev.* (*N. Car.*), 197; *Clark vs. Depew,* 25 *Penn. State R.* 72;

*Derbell vs. Fisher, R. M. Charlton,* 36 (*Geo.*); *Swazey vs. Doe,* 13 *S. & M.* 317; *Young vs. White,* 25 *Miss.* 146; *Williams vs. Banks,* 11 *Md.* 198; *Hanson vs. Buckner,* 4 *Dana,* 251; *Buck vs. Sherman,* 2 *Doug.* 176, (*Mich.*); *Stiles vs. Lightfoot,* 26 *Ala.* 443; *Everett vs. Read,* 3 *N. H.* 55; *Farmers Bank vs. Whinfield,* 24 *Wend.* 491; *Gage vs. McIlvain,* 2 *Strobart; Handley vs. Call,* 27 *Maine,* 35; *Daniel vs. Nelson,* 10 *B. Mon.* 316; *Dresser vs. Ainsworth,* 9 *Barb.* 619; *Weeks vs. Lawrence,* 8 *Barb.* 530; *Boyle vs. Colman,* 13 *Barb.* 42; *Santillon vs. Moses,* 1 *Cal.* 92; *Underhill vs. N. Y. and Harlem R. R.* 21 *Barb.* 489; *Winkley vs. Foye,* 33 *N. H.* 171; *Patton vs. Porter,* 3 *Jones Law* (*N. C.*) 539.

Points and authorities of Respondents:

*First.*—The court below committed no error in receiving or refusing to strike out the testimony adverted to on Appellants' points, numbered "1st, 2d, 3d, 7th and 11th." The testimony was competent to characterize the conveyance of 1st and 7th July, 1856. *Vide Cowen, Hill & Edwards' Notes, Vol. I. p.* 185, *ib. pp.* 188, 189, 190, *notes; Edwards' Notes, p.* 191; *Tompkins vs. Saltmann,* 14 *Serg. & Rawle,* 275; *cited ib.* 191; 8 *Hew & John.* 86; *Edwards' ib. pp.* 192, 193, 194, 195, 201.

*Second.*—The court below properly received testimony embraced in Appellants' points, numbered "4th, 8th, 9th, and 10th."

*Third.*—The evidence received and the evidence rejected under the objections, made at the trial, was properly received and rejected.

*Fourth.*—The court properly refused to instruct the jury as requested by the Plaintiffs below in requests numbered "3d, 5th and 12th," in case, and also as embraced in Appellants' point, number 15. The law applicable to voluntary conveyances, as given to the jury, has been so settled since 1820.

*Vide Rev. Stat. p.* 459, *Sec.* 4; *Willard's Equity Jur. pp.* 225 to 237, *and cases; Story's Equity Jur. pp.* 343 to 360, *&c.; Verplank vs. Stewy,* 12 *Johns.* 536; *Jackson vs. Seward,* 8 *Cowen,* 406; *Jackson vs. Peck,* 4 *Wend.* 300; *Jackson vs. Zeimmerman,* 7 *Wend.* 43; *Van Wyck vs. Seward,* 6 *Paige,* 62; *Wicke vs. Clark,* 8 *Paige,* 65; *Nicholson vs. Lavite,* 4

*Sam. S. C. R. Salmom vs. Bennett,* 1 *Day's Com. Rep.*; *Brackett xs. Waite,* 4 *Vermont,* 389 ; *Lurk vs. Wilkinson,* 5 *Vesy,* 384.

D. COOPER and W. H. BURT, Counsel for Appellants.

L. E. THOMPSON and J. B. BRISBIN, Counsel for Respondents.

*By the Court.*—FLANDRAU, J. I will briefly state the facts in the case which raise the main points. On the 1st day of May, 1849, Samuel Burkleo, one of the Defendants, received the title to lands, in Stillwater, from certain parties by grant in fee. He held the title in his own name until 'the 1st day of July, 1856, when he, together with the Defendant Susanna Burkleo, his wife, conveyed the same to one Elam Greely, who, in consideration of the grant to him, and on the same day, conveyed to Susanna Burkleo the lands in controversy. On the 13th day of November, 1857, Mrs. Burkleo and her husband conveyed the last mentioned lands to the Defendant Samuel Register. Burkleo was in business with one Mower from the fall of 1853, until the 13th day of November, 1857, when they failed. At the time of making the conveyance of the Stillwater property, the consideration for which Mrs. Burkleo received the lands in dispute, the firm of Burkleo & Mower were indebted in considerable amounts to various persons, among whom were the Plaintiffs. After the failure the Plaintiffs put their several demands in judgment, and now file this bill to set aside the deed from Burkleo and his wife to Register, and declare the lands so conveyed subject to the demands of the creditors of Burkleo; the Plaintiffs claiming that the whole transaction must be regarded in the light of a voluntary settlement of the lands by Burkleo upon his wife, which would be fraudulent and void as against his creditors existing at the time. The Defendants deny all fraud in the transaction, and allege that at the time of the conveyance, Mr. Burkleo owned property besides that in controversy, ample to pay all his debts; also, that the property conveyed was bought with the money and property of Susanna Burkleo,

and was her own equitably, although the title was taken in her husband by mistake.

The case was sharply contested in the court below, and the jury finding for the Defendants, the Plaintiffs bring the case here on an appeal from an order denying them a new trial. They present us twenty-eight points for consideration. The view, however, that we have taken of the case, will divide it into two heads or questions, one of which will be subdivided in the discussion.

The first point is, whether such a conveyance is void *per se* as against existing creditors. And the second is, if it is not void *per se*, but only *prima facie* evidence of fraud, as the court held below, did the court err in admitting or rejecting testimony upon the investigation of the questions of fact? I shall first consider the character of the conveyance as to existing creditors.

The general principle that a debtor cannot grant away his property to his family or a stranger by a voluntary conveyance, so as to interfere with the rights of his creditors, has been approved and adopted by all enlightened nations. It is so just in itself as to defy serious objection. It was declared in the Civil Law, and at a very early period established by the Common Law. 1 *Story's Eq. Jur. Sec.* 350; *Dig. Lib.* 42, *tit.* 8, *l.* 1, *Sec.* 1.

This principle was more fully carried into effect by subsequent Statutes of England, as follows: 50 *Edward III. Ch.* 6; 3 *Henry VII. Ch.* 4; 13 *Elizabeth, Ch.* 5, *and* 27 *Elizabeth Ch.* 4. The two first mentioned were aimed against fraudulent gifts of chattels; the 13 *Elizabeth* against conveyances of lands to defeat or delay creditors, and the last, against fraudulent conveyances to defeat subsequent purchasers. It is proper to observe this difference in the English Statutes when examining the cases decided under them, as in some of them the wording of the Statute materially influences the decision of the case. They all, however, contain the same great principle, and have called forth a large amount of discussion in the numerous cases that have arisen under them; very learned jurists in this country and in England have held opposite views as to the effect of these Statutes upon voluntary convey-

ances, some holding that as to existing creditors, the convey-ance was absolutely void, and admitted of no explanation whatever. And others, that in such cases it was only *prima facie* fraudulent, but might be cleared up and sustained, if, at the time the conveyance was executed, the grantor had ample property, other than that conveyed, to satisfy all the demands against him, and the conveyance was otherwise *bona fide.* It would be an unnecessary task to undertake here a review of the cases upon this subject, when so many such reviews are furnished us by the elementary writers of the present day. (See discussion of the subject in 1 *Story Eq. Jur. Secs.* 351 *to* 365, *inclusive;* 2 *Kents' Com. p.* 547 *to* 551, *inclusive, and notes.* See also, the cases of *Read vs. Livingston,* 3 *John. Ch.* 481, *and Seward vs. Jackson,* 8 *Cow.* 406. I will merely arrange a few of the many cases involving this question under the points which I consider they sustain, adding, as I said above, that some of them are upon the question of subsequent purchasers and creditors, and some upon existing demands when the voluntary conveyance was executed. Of the. English cases which sustain the doctrine that no voluntary con-veyance can stand against an existing creditor of the grantor, are the following : *Prodgers vs. Langham,* 1 *Sid.* 133 ; *White vs. Hussey. Prec. in Ch.* 14; *Gardiner vs. Painter, Cas. temp. King C. p.* 65 ; *Tonkins vs. Ennis,* 1 *Eq. Cases, Abrg.* 334; *Russell vs. Hammond,* 1 *Atk.* 15 ; *Twynes' Case,* 3 *Co. R̲.* 89 ; *Brown vs. Jones,* 1 *Atk.* 188; *Wheeler vs. Carlyl, Ambl.* 121 ; *White vs.̈ Samson,* 3 *Atk.* 410 ; *Beaumont vs. Thorps,* 1 *Ves. Sen.* 27 ; *Lord Townsend vs. Windham,* 2 *Ves. Sen.* 1–10 ; *Doe vs. Manning,* 9 *East.* 63 ; *Nunn vs. Wilsmore,* 8 *D. & E.* 528 ; *Doe vs. Martyr,* 4 *B. & P.* 332 ; *Buckle vs. Whitchell,* 18 *Ves.* 100 ; *Hill vs. The Bishop of Exeter,* 2 *Taunt.* 82.

While it may fairly be collected from these English cases that the Judges who decided them meant to hold that a vol-untary conveyance could not stand against a prior existing debt under any circumstances, but as to such was void by presumption of law ; yet it should not be overlooked that the circumstances and facts of many of the cases would have war-ranted the decisions upon the assumption that the deeds

were only *prima facie* evidence of fraud, and a litigation of an issue joined upon that theory.

The following are some of the English cases that hold that the deed is not void *per se*, but may be vindicated upon proof of the *bona fides* of the transaction : *Sagitary vs. Hide*, 2 *Vern.* 44; *Sir Ralph Bovy's case*, 1 *Ventr.* 193; *Walker vs. Burrows*, 1 *Atk.* 93; *Lord Teynham vs. Mullins*, 1 *Mod.* 119; *East India Comp. vs. Clavell*, *Gibb. Eq. Rep.* 37; *Jenkins vs. Kemishe, Hardres*, 398; *Garth vs. Mois*, 1 *Kebles*, 486; *Lush vs. Wilkinson*, 5 *Ves.* 384; *Cadogan vs. Kennett*, *Cowp.* 432; *Doe vs. Rutledge*, *Cowp.* 705.

I will now examine the effect that the English decisions have had upon the courts of this country, so far as my limited resources will permit me. In Connecticut, in the case of *Salmon vs. Bennett*, 1 *Day's Conn. Rep. N. S. p.* 525, the question arose about the year 1815 or 1816, as to a voluntary conveyance from father to son, when assailed by a creditor whose debt existed at the time of the execution of the deed. The court were unanimous in allowing the question of fraud to be examined into, and held substantially as follows : That mere indebtedness at the time will not in all cases render a voluntary conveyance void as to creditors, where it is a provision for a child; that an actual or express intent to defraud need not be proved, for this would be impracticable in many instances where the conveyance ought not to be established, and it may be collected from the circumstances of the case; that if there be no fraudulent inte nt, and the grantor be in prosperous circumstances, unembarrassed, and not considerably indebted, and the gift a reasonable provision for the child, leaving ample funds unincumbered, for the payment of the grantor's debts, the voluntary conveyance will be valid against existing creditors. But if the grantor be considerably indebted and embarrassed, and on the eve of bankruptcy, or if the gift be unreasonable, disproportioned to his property, and leaving scanty provision for his debts, the conveyance will be void, though there be no fraudulent intent. The question in this case was presented in an action of ejectment, but seems to have received as full consideration as if the action had been directly to set aside the voluntary deed.

In 1818, the same question was presented to Chancellor Kent, of New York, in the case of *Reade vs. Livingston, Reported in* 3 *John. Ch. R.* 481. In this case the Chancellor enters extensively into a review of the English cases, examining many of those which I have cited and others; he also comments upon the case of *Salmon vs. Bennett,* in Connecticut, which had then been recently decided, and holds it to be adverse to the conclusions he draws from the English cases, by which, he says, he "considers himself governed." His views of the subject, as expressed in this case, may be gathered from the following extract from his opinion, taken from pages 504 and 505 : "If the question rests not upon an actual fraudulent intent, (as is admitted in all the cases,) it must be a case of fraud in law, arising from the fact of a voluntary disposition of property *while indebted,* and the inference founded on that fact cannot depend on the particular circumstances, or greater or less degree of pecuniary embarrassment of the party. These are matters for consideration when we are seeking, as in the case of subsequent creditors, for actual fraud. I apprehend it is upon the whole better and safer not to allow a party to yield to temptation or natural impulse, by giving him the power of placing property in his family beyond the reach of existing creditors. He must be taught by doctrines of the court that the claims of justice are prior to those of affection. The inclination of my mind is strongly in favor of the policy and wisdom of the rule which absolutely *disables* a man from preferring by any arrangement whatever, and with whatever intention by *gifts* of his property, his children to his creditors."

The Chancellor goes the full length undoubtedly that a deed of this nature cannot be sustained if the grantor *was indebted* when he executed it, and although his reasons may be excellent in theory and morals, still it would be exceedingly hard, and I think in conflict with principles equally as well grounded in justice as those suggested by this case, to deprive a party of the power of making a settlement upon his family, or any member thereof, simply because he may unwittingly owe some trifling debt, which perhaps, even if he knew of its existence, he could not at once clear up; and such is the effect of the decision. I can, on the other hand, see no objection to the

rule which allows an impartial jury to become the umpires in all such cases, of the meritoriousness of the transaction.

In 1826 the same question was again presented to the courts of New York in the case of *Seward vs. Jackson, reported in* 8 *Cowen* 406, where the court for the correction of errors, decided that such a deed was only *prima facie* evidence of fraud, and that the question was open for investigation. The counsel for the Appellants insist that this case is not an authority, as the court declared that the deed involved was not voluntary, but for a valuable consideration. I have not omitted to consider that feature in the case, yet the question was very learnedly discussed upon the broad principle involved here, and Mr. Senator Allen, after reviewing the authorities upon this point, admits that the deed was not purely voluntary, but refuses to take that point as the basis of his decision. He says, (*page* 455): "I do not, however, rely upon this view of the case. I take the broader ground on which I set out. I am aware that the policy of permitting the voluntary conveyance to be only *prima facie* evidence of fraud, has been questioned. It has been said, it would be embarrassing if not dangerous to the rights of creditors, and prove an inlet to fraud. If it were really so, and the law has not gone far enough for the support of creditors, it belongs to the legislature, and not the courts, to extend it. But how would the principle be embarrassing and prevent the detection of fraud? When a creditor comes to impeach the deed, he is supported, in the very out set, by the presumption that it is fraudulent; and this presumption he can fortify and strengthen by every fact and circumstance that has a tendency to show the fraud; and all this must be repelled by evidence so clear and irresistible as to leave no doubt of the fairness and honesty of the transaction; and where there is actual fraud, such as in my view of the case comes within the act, I believe the rights of the creditor will be safe before a jury."

In this case twenty-four members of the court concurred in the decision, and only one dissented.

Although the counsel for the Appellant doubts the authority of the case of *Seward vs. Jackson,* 8 *Cowen* 406, I am satisfied that the rule in that case has been followed in New York. The

case of *Jackson vs. Peck*, 4 *Wend.* 300, adopts the position of that case. The court says, (*page* 303): "The doctrine of voluntary conveyances has recently been very fully considered in the court of errors, in the case of *Seward vs. Jackson*, 8 *Cowen* 406, and the distinction which previously had been supposed to exist between fraud in law, and fraud in fact or actual fraud, appears to have been entirely exploded." I, perhaps, cannot entirely approve the accuracy of this expression, yet from further comments, it is clear that the court adopt the reasoning of the case as authority.

Again, in *Jackson vs. Timmerman*, 7 *Wend.* 436, the court say: "What was formerly considered as fraud in law or *conclusive* evidence of fraud, and to be so pronounced by the court, is now but *prima facie* evidence, to be submitted to and passed upon by the jury." To this he cites 8 *Cow.* 406, *and* 4 *Wend.* 303.

In 6 *Paige* 62, *Van Wyck vs. Seward*, the court say, referring to the decision in *Seward vs. Jackson*, 8 *Cowen*, 406: "It is therefore conclusively settled that the mere fact of an existing indebtedness does not render a voluntary conveyance from a parent to his child, absolutely fraudulent and void in law, as against the creditors, whose debts were contracted previous to such conveyance, where no intention existed on the part of the grantor to delay or defraud his creditors."

8 *Paige* 161, *Wickes vs. Clarke*, to which we are also cited by the counsel for the Respondent, is claimed by the Appellants to be a strong case for them. In reference to this claim, I have given that case a very careful examination, and am satisfied that it fully sustains the case of *Seward vs. Jackson*. Although the deed in controversy, was held, so far as it related to the husband's interest as tenant by the courtesy initiate in his wife's real estate, to be fraudulent and void as to existing creditors, it was so held expressly on the ground that there was "nothing in the case to show that the husband retained to himself sufficient property of his own to satisfy all existing debts or claims for which he was then liable," (*Opinion of Chancellor, p.* 172) showing that had such facts been proved, the decision would have been different.

I cannot run through all the American cases that adopt this

principle.   I will therefore simply cite some of them in the United States and State courts.  *Verplank vs. Sterry,* 12 *John.* 536, 556 ; *Manhattan Company vs. Osgood,* 15 *John.* 162 ; *Jackson vs. Brush,* 20 *John.* 5 ; *Bank of the U. S. vs. Hons-man,* 6 *Paige* 526 ; *Hamilton vs. Greenwood,* 1 *Bay. Rep.* (*South Carolina*) 173 ; *Teasdale vs. Reaborne,* 2 *Bay.* 546 ; *Taylor vs. Heriot,* 4 *Desauss* (*South Carolina*) 232 ; *Smith vs. Neil,* 1 *Hawks,* (*North Carolina*) 341; *Trotter vs. Howard,* 1 *Hawks.* 320 ; *Gilpin vs. Davis,* 2 *Bibb.* (*Kentucky*) 416 ; *Taylor vs. Eubank,* 3 *Marsh.* (*Kentucky*) 239 ; *Hind's lessee vs. Longworth,* 11 *Wheat.* 211.   Some of these cases arose upon questions of the rights of subsequent purchasers, and some upon questions involving personal property, yet they all throw light upon the principle in support of which they are cited.

In the light of all these authorities, and many more, Judge Story (1 *Eq. Jur., Sec.* 365) says : " Under this apparent diversity of judgment it would ill become the commentator to interpose his own views as to the compartive weight of the respective judicial opinions.  It may probably be found in the future, as it has been in the past, that professional opinions will continue somewhat divided upon the subject, until it shall have undergone a more searching judicial examination, not upon authority merely, but upon principle.  If the question were now entirely freed from the bearing of *dicta* and opinions in other times, there is much reason to believe that it would settle down into the proposition (certainly the most conformable to the language of the *Statute of* 13 *Eliz.*) that mere indebtment would not *per se* establish that a voluntary conveyance was void even as to existing creditors, unless the other circumstances of the case justly created a presumption of fraud, actual or constructive, from the condition, state, and rank of the parties, and direct tendency of the case to impair the rights of creditors."   See also a recent English case which holds this doctrine ; *Gale vs. Williamson,* 8 *Mees. & Welsb. R.* 405–9–10–11.

Chancellor Kent, in his commentaries (*Vol.* 2, *page* 549, *7th Ed.*) holds to the view he took of the question in *Reade vs. Livingston,* and says it has since been recognized in the Su-

preme Court of New York in *Jackson vs. Seward*, 5 *Cow.* 67 ; but as we have seen, this case was subsequently overruled in the court for the correction of errors, which fact, with the cases that have since been decided in New York, are noticed in the notes to Chancellor Kent's text, which accompany the volume.

Without pursuing the question further, we are of the opinion that to hold a voluntary conveyance void simply upon the fact that the grantor was at the time of executing it, *indebted*, without regard to the relation his debts bear to his property reserved, no fraud appearing, is in conflict with the authorities, and not sound in principle. Such a strict rule of interpretation, would, in almost every case, deprive a party of his undoubted right to make a meritorious settlement upon his family, by destroying his right to defend himself against a charge of fraud.

The statute of frauds of this State, which covers the question at bar, (if a voluntary settlement upon a wife falls within the class of conveyances therein mentioned, and we think it does) is on *page* 459 *of the Compiled Statutes.* Section one declares all conveyances of land, etc., made with intent to hinder, delay, or defraud creditors, etc., as against the person so hindered, delayed or defrauded, void.

Section four declares that "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact and not of law, nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration."

The construction this court has placed upon the fourth section of the statute, is, that every question of fraudulent intent arising under the act, must be submitted to the jury, unless the instrument carries upon its face the evidence of the intent, in which case it being indisputable, the jury could only find one way, and the court declare the fraud to exist without the form of a verdict. *Greenleaf vs. Edes*, 2 *Minn. R.* 265 ; *Truitt Brothers & Co., vs. Caldwell*, 3 *Minn. R.* 364 ; *Scott vs. Edes*, 3 *Minn. R.* 377. The deed which is sought to be impeached in this case bore no evidences upon its face of fraud, but the

fraud, if any, was to be determined from the existence of debts against the grantor, and other circumstances showing that his financial condition at the time he executed it, would not permit it to stand in justice to his creditors, or by establishing an actual intent to defraud; either of which positions being established, the deed would fall under the operation of the statute. The question was necessarily one for the jury under our view of the law, mere indebtedness, which appeared in the pleadings, not being fatal to it.

The charge of the court on this branch of the case is in exact accordance with our views of the law, and was quite as favorable to the Plaintiff as the case would admit of. In this aspect of the case there is clearly no error.

We have treated the conveyance in the light of a purely voluntary one, as that is the strongest view that can be taken against it; we do not deem it necessary to consider the effect of the claim of Mrs. Burkleo, to having contributed by her separate property to the original consideration, thereby entitling herself in equity to corresponding settlement, save only so far as the fact was used as evidence of the good faith of the transaction. *See Wickes vs. Clarke,* 8 *Paige Ch. R.* 161.

When the question was on trial, we think, under the pleadings, the pecuniary ability of the grantor, and the good faith of the settlement were fully open for investigation; which leads us to an examination of the exceptions taken by the Plaintiff to the evidence that was admitted.

In answer to the charge that the title to the property was put into Mrs. Burkleo with a fraudulent design to defeat the creditors of Burkleo & Mower; the Defendants take the ground that it was so done in consummation of an arrangement that the property should be hers, which dated back as far as 1849. To establish this position they prove that part of the original consideration was her money. That the design was to have the deed made to her in 1849, but that it was made to Burkleo by mistake of the party who drew it, which was never corrected, but the property was always considered between the Defendants Burkleo and wife, as her property. We must remember here that although actual fraud is not necessary to be proven to get rid of such a conveyance as the one attacked

here; yet it may be proven, and the deed disposed of in that way; and where the Plaintiff makes the issue of actual fraud as he has done in his pleadings in this case, the Defendants have a full and perfect right to prove any fact or circumstance which will in any way tend to avoid the actual fraud and prove the real intention under which they acted in making the deed. There are two issues. Actual fraudulent intention; and a degree of insolvency which would disable the party from making the settlement. The testimony that would support one issue might be irrelevant to the other, and *vice versa*, but if relevant to either, should be received.

There is no possible way of proving the motives which actuate men in the affairs of life, save by proving their acts and all the concomitant circumstances, and from them deducing the motive upon the principles which observation and experience have taught us rule human conduct. If the original design was that Mrs. Burkleo should have this property in 1849, and the parties had since that time treated it as hers, it might not be conclusive, but it would be a very strong fact to show the final conveyance of it to her was a consummation of the original intention, and not a cover for fraud. The testimony admitted on this point was, we think, material and relevant to the question of actual fraud, which was charged against the conveyance. The jury, however, could not have acted upon this view of the case to any considerable extent, because the court expressly, upon the request of the Plaintiff's counsel, charged them, that the design to convey the Stillwater property to Mrs. Burkleo by her husband was "wholly immaterial as between Samuel Burkleo and his wife, and his creditors, these Plaintiffs."

If this testimony was admissible to prove the actual intent with which the deed was made, it answers the 1st, 2d, 3d, 7th, 11th, 18th, 19th, 20th, 21st, and 24th points of the Appellant.

The fourth point was of the same nature, and directed against the charge of actual fraud. Secrecy is always a badge of fraud, while candor and open dealing go to show the contrary.

As to the eighth point, the court was right in allowing Mrs. Burkleo to say whether or not she knew anything about the

condition of her husband and Mower's affairs, because she with the other Defendants is included in the charge of fraud; if therefore, she did not know anything about the indebtedness of the firm of Burkleo & Mower, she could not well have participated in the design to defraud their creditors. Each Defendant had a right to exculpate himself from the charge as best he could by the proof of any fact tending to such result.

The twenty-fifth point follows the eighth.

The 5th, 6th, 9th, 10th, 12th, 13th, 14th, 15th, 22d, 23d, 26th, 27th and 28th points are involved and decided in the general discussion, by which we decide that a voluntary conveyance is not *per se* void because the grantor was indebted at the time of its execution, but that the reasonableness of it must go to the jury.

When the case went to the jury, they had the whole question before them, of the good faith with which the deed was made. The relation that the grantor's debts bore to the amount of property that he reserved; his financial status at the time, all things being considered, the reasonableness of the settlement, and its justice as to existing creditors under all the facts and circumstances of the case; and they found all these points in favor of the Defendants. The only ground upon which we could interfere would be that suggested in the sixteenth point of the Appellant, "that the evidence is insufficient to sustain the verdict." There are features in the evidence that cast some shadow upon the transaction, yet there are others, and strong ones, that would lead the mind to sustain it as free from any design to injure the rights of others, or as chargeable with that effect at the time it took place: under such circumstances we do not feel justified in saying that the jury erred in their judgment upon the facts.

The order is affirmed.