RODERICK D. HATHAWAY

*vs.*

WILLIAM BROWN, Sheriff; *et al.*

The defendant Brown on July 23, 1869, took from the possession of plaintiff, on writs issued at the suit of the other defendants, creditors of M., a stock of goods theretofore sold and delivered by M. to plaintiff, who brought this action to recover damages therefor; the defendants defended on the ground that said sale was made with intent to hinder, delay and defraud the creditors of M. and that plaintiff knew it. Plaintiff being called and testifying on his own behalf, was asked on cross-examination, what reason M. gave when he proposed the sale for wishing to sell out, and replied, that "he said he had an opportunity to travel by the month, on a salary, and could do better than in trade.". *Held*, that defendants having chosen to put the question, the answer was evidence, though it would have been incompetent on the examination in chief, and though it were favorable to plaintiff; but that it would not be competent,

Hathaway v. Brown et al.

on re-examination, for plaintiff to give evidence of other statements, also favorable to him, and inadmissible in chief, simply because they were a part of the same conversation.

P., a witness called for defendant, stated that he dissolved partnership with M. about a year before the sale in question, and that just before such dissolution, he told the plaintiff that M. was heavily in debt, and owed more than P. feared he would be able to pay. *Held,* that evidence that M. had stated to plaintiff after such dissolution had taken place, and P. had taken away his share of the partnership property, that " he had notes and accounts enough to pay his debts," was incompetent, it being neither part of the same transaction, nor in rebuttal, either of P.'s evidence, or of defendants' case generally.

If M. made the sale with such fraudulent intent, it is void as against creditors, except in the hands of a *bona fide* purchaser for value without notice thereof. It was not competent, therefore, for plaintiff to testify, that, in making the purchase, he " did not intend to defraud anybody." If there was fraud on M.'s part, it was enough for defendants to show that plaintiff had notice of it.

Evidence, of an adjudication of bankruptcy against M. made by the United States district court on September 28, 1869, on the petition of his creditors, filed September 16, 1869; of an injunction issued from said court on said 16 September, enjoining M. and the defendant Brown from selling or disposing of said property; of the appointment of an assignee, and of a suit commenced by said assignee in said court against plaintiff to recover the value of said goods, held inadmissible. It had no tendency to show that M. was insolvent at the time of this sale, nor was it evidence of the exclusive jurisdiction of the said court over the subject matter of this action.

*Held,* also, that this case was to be tried in accordance with the rules of evidence at common law applicable thereto, not those prescribed by the bankrupt act for suits brought under its provisions.

An instruction, that the burden of proof was on plaintiff to show that he bought in good faith without knowledge or reasonable cause to believe that M. made the sale with intent to hinder, delay or defraud his creditors; that if he has failed to satisfy the jury by a preponderance of proof, that he did so purchase in good faith, they must find a verdict for defendants was rightly refused.

The defendant, William Brown, sheriff of Olmsted county, levied upon and took from the plaintiff a stock of goods, which

he purchased from one William H. Mills, under certain writs of attachment, issued against the property of Mills, in favor of the other defendants. The plaintiff claiming that such taking was wrongful and unlawful, brought this action in the district court for said county, to recover damages therefor. The defense was, that the sale of the goods by Mills to plaintiff, was fraudulent, being made with intent to hinder, delay and defraud the creditors of said Mills, and with a knowledge of such intent on the part of the plaintiff.

On the trial the plaintiff, having testified in his own behalf and having been asked by defendants' counsel, on cross examination, what reason Mills gave him, when he proposed the sale, for wishing to sell out, and having answered, " Mills said he had an apportunity to travel by the month, on a salary, and could do better than in trade, and that he was ready to trade for the land;" on a re-direct examination he was asked the following question: "When he said he could do better traveling by the month, did Mills state to you how well he could do?" The defendants objected, their objection was overruled and the witness answered, "he said he could get sixteen hundred dollars per year, and wanted to sell out, to accept the proposition. It was to collect and take orders for patent medicines, as an agent, so he said."

The defendants offered in evidence, among other things, certified transcripts; of a petition for the adjudication of Wm. H. Mills, a bankrupt, filed in the U. S. district court for the district of Minnesota, Sept. 16, 1869; of the order to show cause issued thereon; of a writ of injunction issued out of said court on that day, restraining the said Mills, and defendant Brown, from making any sale, transfer or disposition of the property in question; of the order of adjudication upon the said petition; of the order of said court appointing an assignee, and of the assignment of said Mills' property to such

Hathaway v. Brown et al.

assignee; also of a summons and complaint in a suit in the U. S. circuit court for said district, commenced by the assignee of Mills in bankruptcy, against the plaintiff in this action, to recover the value of the goods which are in controversy here. The plaintiff objected, the court sustained the objection, and defendants excepted.

One Jones, a witness for defendants, after testifying that he had a conversation with Mills shortly after the sale, was asked the following question: "In that conversation did Mills state the purpose for which he made the sale of these goods?" The plaintiff objected, his objections were sustained, and defendants excepted. One Pattridge, a witness for defendants, having testified, that he was in partnership with Mills from November, 1867, to May 18, 1868, (about a year and two months prior to the sale to plaintiff); that Mills was then embarrassed; that just before the dissolution, on application made by him to plaintiff for his assistance in bringing about such dissolution, that he told plaintiff, among other things, that Mills was heavily in debt, and owed more than he (witness) feared he would be able to pay; the plaintiff was recalled in rebuttal, and asked the following question: "What did Mills say to you, if anything, as to the sufficiency of his notes and accounts to pay his debts, at the time of the dissolution of Pattridge & Mills?" The defendants objected, their objections were overruled, and the witness answered: "After the change was made, and Pattridge got out of the store his part, Mills said he had notes and accounts enough to pay his debts, and if Pattridge could swing his part, he was smarter than he thought he was."

The plaintiff was also asked, while testifying in rebuttal, the following question: "In making the purchase of these goods had you any intention to defraud any creditors of Mills?" This was objected to by defendants, and their objec-

tions overruled, and before answer, the following question was put: "Did you in making the purchase of Mills of this property, intend to hinder, delay, or defraud his creditors?" The defendants also objected to this question, and the court overruling their objection, the witness answered: "I did not intend to defraud anybody."

At the close of the testimony the defendants requested the court to instruct the jury, among other things, as follows:

"First. It is in evidence and undisputed, that at and before the time of the sale and transfer made by Wm. H. Mills to the plaintiff Hathaway, on or about July 13th, 1869, the said Mills was a merchant, doing a general retail business at Pleasant Grove, in this county, and that the plaintiff's right to the property in question is derived from that sale and transfer, which was of the entire stock of goods and merchandise of said Mills in his said business. This then was a transfer made by Mills to Hathaway out of the usual course of the business of Mills, and if the jury find that at the time of the sale Mills was indebted beyond his means of payment, in the ordinary course of his business, and was in fact insolvent, or in contemplation of insolvency, then, the fact that the sale was not in the usual course of the business of said Mills, but was a transfer of his entire stock of goods, it is *prima facie* evidence of fraud in the transfer."

The court refused to give said instruction to the jury, and to such refusal the defendant excepted.

"Second Instruction. When a retail merchant is insolvent or bankrupt, or in contemplation of insolvency or bankruptcy, and while in that condition makes a sale of his entire stock of merchandise to another person, such sale is not only *prima facie* evidence of fraud, but the person to whom the transfer is made, is bound, if he has reasonable cause to believe he is embarrassed, to inquire into the circumstances of the person

Hathaway v. Brown et al.

making the sale, and to ascertain by such means as may be reasonably within his reach, whether the proposed transfer is to be made for a fraudulent purpose."

The court refused to give said instruction to the jury, and to such refusal the defendant excepted.

" Third Instruction.   Under the circumstances of this sale made by Mills to Hathaway, the burden of proof is upon Hathaway to show that he made the purchase in good faith, without any knowledge or reasonable cause to believe that Mills made the sale with the intent to hinder; delay, or defraud his creditors.   If he has failed to satisfy the jury by a preponderance of proof, that he did so purchase in good faith, then you must find a verdict for the defendants."

The court refused to give the instruction, and defendants excepted.

At defendants' request the court charged, among other things, as follows :

" When any person is indebted, and makes a sale or transfer of his property, or any of it, to another person with the intent to hinder, delay or defraud his creditors, such sale is void as against the creditors of the person making the transfer if it appears that the person to whom the transfer is made, knows, or has reasonable cause to believe, that the transfer is made for the purpose of hindering, delaying or defrauding the creditors of the person making the transfer."

The jury found a verdict for plaintiff for $2,789.23.   The defendants made a motion for a new trial, which was denied, and they appeal from the order denying the same to this court.

H. C. Butler, and McMahon & Clough, for Appellants.

Stearns & Start, and C. H. Berry, for Respondent.

*By the Court.*—Ripley, Ch. J.—The verdict in this case must be set aside, and a new trial granted, by reason of the erroneous rulings now to be stated.

The defendants' case is that the sale of the goods by Mills to the plaintiff, for the taking and conversion of which the action was brought, was made with intent to hinder, delay and defraud the creditors of Mills, and that plaintiff knew it.

Plaintiff was called as a witness at the trial, and testified in his own behalf. On cross-examination he was asked by defendants' counsel as to what reasons Mills gave him, when he proposed the sale, for wishing to sell out to him. To which plaintiff replied, " Mills said he had an opportunity to travel by the month, on a salary, and could do better than in trade, and that he was ready to trade for the land."

Upon his re-examination, he was allowed, against defendants' objection, to answer the following question : " When he said he could do better traveling by the month, did Mills state to you how well he could do ?" and stated that " He said he could get sixteen hundred dollars per year, and wanted to sell out to accept that proposition. It was to collect and take orders for patent medicines, as an agent, as he said."

Since the defendants chose to put the question to plaintiff as to Mills' reasons, his answer thereto was evidence, though it would have been incompetent upon the examination in chief, and though, as plaintiff contends that it was, it were favorable to him.  1 *Starkie Ev. Pt. 2, Sec.* 27 ; 3 *Burrows*, 1214.

But it does not follow that on re-examination, the plaintiff could bring out evidence of other statements, also favorable to him, and inadmissible in chief, simply because they were a part of the same conversation.

The object of a re-examination is to explain the facts stated by the witness on cross-examination.  3 *Starkie Ev. Pt.* 4, *p.* 1751.

Hathaway v. Brown et al.

The question propounded and objected to, asked for no explanation; nor did the statements which the witness had made require one, either to clear up any ambiguity or obscurity as to its meaning, or to prevent it from operating injuriously to plaintiff.

Even if the cross-examination had elicited statements made by Mills, which as admissions, would have been evidence against the plaintiff, the witness could not on re-examination have been permitted to testify to any other statements not in some way connected with those drawn out on cross-examination. 1 *Greenl.* § 467.

The statements drawn out on cross-examination being *per se*, inadmissible as evidence for plaintiff, although they were not to be withdrawn from the jury, still, while plaintiff may re-examine as to them, he can only do so, so far as to explain what may require explanation. He cannot make further evidence for himself in the same direction.

1 *Greenl. Ev.*, § 468, relied on by plaintiff, does not support his position. The illustration there given, is of a re-examination directed to show the true character of what had been brought out on cross-examination, and what would give a wrong impression if left unexplained, and one which might be injurious to the plaintiff.

One Pattridge, a witness called by the defendants, testified that he was in partnership with Mills from Nov. 1867, to May 18th, 1868, being about a year and two months prior to the sale to plaintiff; that Mills was then embarrassed; that just before the dissolution, on application made by him to plaintiff for his assistance in bringing such dissolution about, he told plaintiff, among other things, that Mills was heavily in debt, and owed more than witness feared he would be able to pay. Plaintiff being recalled, was asked " What did Mills say to you, if anything, as to the sufficiency of his accounts to pay his

debts at the time of the dissolution of the partnership of Pattridge & Mills ?" and was allowed to answer, against defendant's objection, as follows: " After the change was made, and Pattridge got out of the store his part, Mills said he had notes and accounts enough to pay his debts, and if Pattridge could swing his part, he was smarter than he thought he was." This, the plaintiff says, is a denial of Pattridge's statement, and admissible ; 1st, as part of one transaction ; 2d, as rebuttal.

The conversation sworn to by Pattridge was, however, a private one between plaintiff and himself before the dissolution, while Mills' statement was after the dissolution, after the firm property had been divided, and Pattridge had taken away his share. There is, therefore, no ground for saying that it was part of the same transaction ; nor is there anything to show that Mills knew what Pattridge had so told the plaintiff, or that his statement was intended as a denial thereof. If it had been, it would not have been admissible as rebutting evidence.

Pattridge had sworn that Mills was in debt, and that he had told plaintiff so. This might be rebutted, by proving either that Mills was not indebted, or that Pattridge did not so tell plaintiff. That Mills said he was solvent, was not evidence to prove that he was ; and of course had no tendency to show that Pattridge had not told plaintiff to the contrary, nor could it be competent in rebuttal of the defendants' case generally. That, as we have seen, was, that the sale to plaintiff in 1869, was made with a fraudulent intent, and that plaintiff knew it. It would not be contended that Mills' solvency in 1869, could be proved by showing that he told plaintiff in 1868, that he was then solvent. No more would such a statement tend to prove, that if insolvent at the time of the sale, the plaintiff, nevertheless, was ignorant of that fact.

Hathaway v. Brown et al.

If the plaintiff's theory be, that whereas Pattridge's statement might be supposed to have impressed plaintiff's mind with a belief that Mills was insolvent; that, therefore, evidence of Mills' statement would be competent to show that such impression had been, or might have been removed; the answer is, that the question here, as we shall have occasion to consider more fully hereafter, is not what *might, in point of fact*, have been plaintiff's belief as to Mills' intent in selling out to him, but whether he *had notice* of that intent.

Suppose it had been proved that the day before, or the week before this sale, Mills had disclosed the true state of his affairs, and his insolvency to the plaintiff.   Who would contend that the plaintiff could rebut such evidence, by proof, that, nevertheless, Mills accompanied his offer to sell out to him, by the assertion that he had been mistaken in his former statement, and that he was really solvent.

Yet as *a matter of fact*, plaintiff *might* have believed that it was so, and so believing, have made the purchase without inquiry as to how the fact was.   In answer to the following questions:

1.   "In making the purchase of these goods, had you any intention to defraud any creditors of Mills?"

2.   "Did you in making the purchase of Mills of this property, intend to hinder, delay or defraud his creditors?"   The plaintiff was allowed, the defendants objecting, to state as follows:   "I did not intend to defraud anybody."

The plaintiff relies on the decision in *Seymour vs. Wilson*, 14 *N. Y.* 567, viz.: that on an issue of fact as to whether an assignment or transfer of property was made to hinder, delay or defraud creditors, it is competent, where the assignor is a witness, to inquire of him, whether in making the assignment or transfer, he intended to delay or defraud his creditors.

This case has been followed in New York.   In *Thurston vs.*

*Cornell*, 38 *N. Y.* 281, the court of appeals say, that it is now well settled, under the rules admitting parties to testify in their own behalf, that where the character of the transaction depends upon the intent of the party, it is competent when that party is a witness, to inquire of him what his intention was.

A very recent case, however, in that court denies the correctness in principle of such a doctrine. " Were we," it is said, " without any direct authority in this court adjudging the admissibility of such an inquiry, I should be very unwilling now to concede it." *Cortland Co. vs. Herkimer Co.*, 44 *N. Y.* 22. The majority of this court would be unwilling to concede it, were the question before us. *Filley et al. vs. Register et al.*, 4 *Minn.* 405.

But the evidence now under consideration does not fall within the rule.

Here, as in all other cases of such alleged fraudulent transfers, there are two questions for the jury : 1st, whether the transfer was made with the fraudulent intent, and 2d, whether the purchaser participated in it, or had knowledge of it. *Bridge vs. Eggleston*, 14 *Mass.* 244, *p.* 249.

The creditor must prove actual fraud in the assignor, and if that is proved upon him, then the knowledge of it on the part of the assignee is to be proved ; for all transfers of real or personal property made with such fraudulent intent, are by the statute ( 13 *Eliz.* ) which is declaratory of the common law, utterly void as against such creditors, except in the hands of a *bona fide* purchaser for value, without notice of such fraud. If fraud existed on Mills' part of which plaintiff had notice, that would be sufficient for defendants. *Twyne's case*, 1 *Smith Lea. Ca.*, *p.* 39 ; *Bridge vs. Eggleston*, 14 *Mass.* 244, 249 ; *Durfee vs. Pavitt et al.*, 14 *Minn*, 424, 433, 434.

This case is to be governed by the common law rule.   *Blackman vs. Wheaton,* 13 *Minn.* 326.

And further, as to such transfers of personal property, the provision of *Gen. Stat. ch.* 41, *sec.* 20, that the question of fraudulent intent shall be deemed a question of fact, would not apply.   That matter is left as at common law.

We perceive no objection, in point of law, to the instruction given at defendants' request ; viz.:   " When any person is indebted, and makes a sale or transfer of his property, or any of it, to another person with intent to hinder, delay or defraud his creditors, such sale is void as against the creditors of the person making the transfer, if it appears that the person to whom the transfer is made knows, or has reasonable cause to believe, that the transfer is made for the purpose of hindering, delaying or defrauding the creditors of the person making the transfer."

The sale is void, without reference to the actual intent of the purchaser.   It is the law which, in such case, charges him with that guilty knowledge which makes him a participator in the fraud ; and his evidence that he did not intend to defraud any one, is entirely beside the case.

This being so, it is easy to see that the testimony in question might have influenced the jury, especially, where, as here, the evidence was conflicting, and the jury were instructed that the plaintiff's " acts and *motives, so far as they are disclosed by the evidence,* are all to be considered by the jury."   So too with respect to Mills' statements above considered.

There must, therefore, be a new trial.   Other questions arising in the case, may also in that view, be properly determined at this time.

Passing over the technical objections to the admission of the transcripts from the records of the United States district

and circuit courts, we are of the opinion that they were properly excluded.

The petition and adjudication, were not competent evidence that Mills was insolvent at the time of this sale.

The proceedings were in September. An adjudication of nsolvency in September, if such were made, (which does not appear) by the district court of the United States, if otherwise competent, would have no tendency to show that Mills was insolvent in July, when this sale took place.

Nor were they, nor was the injunction issued out of said court, on the filing of such petition, and directed to Mills, and the defendant Brown, the sheriff, forbidding them from making any sale, transfer or disposition of the property in question, and then held by the sheriff under the several attachments and executions set out in this case, evidence of the exclusive urisdiction of the district court over the subject matter of this action.

So far as the sheriff is concerned, this is an action in the nature of an action of trespass *de bonis*. The plaintiff does not seek to recover the goods, but damages for the taking on the 23d of July, 1869.

Unless the sale was void at common law as against Mills' creditors, the sheriff was a trespasser in taking the property upon these writs.

The right of action which would in such case have accrued to the plaintiff on the 23d of July, to recover damages in respect of such trespass, was none the less valid, because such sale, though good at common law as against Mills' creditors, might be, as it well might be, a fraud on the bankrupt act. [*See sec. 35 of the bankrupt act.*]

The sheriff could not defend himself by showing that such injunction had been issued ; nor that the assignee in bankruptcy had commenced an action against the plaintiff to re-

Hathaway v. Brown et al.

cover the value of said goods. If the sale were good at common law, the plaintiff could recover against the sheriff in this action. If it were a fraud on the bankrupt act, the assignee could recover, to a like extent, against the plaintiff. He could not, however, recover the value of the goods from the plaintiff, and also take the goods from the sheriff. The irrelevancy of such evidence is therefore quite apparent.

So, as to the instructions asked and refused, we perceive no error in the refusal of the court to give them.

As to the first and second instructions it is the bankrupt act, (*sec.* 35,) and not the principles of the common law, whereby a sale, not in the usual course of business, is under the circumstances in that section stated, and the actions therein contemplated, made *prima facie* evidence of fraud.

This case was to be tried in accordance with the rules of evidence at common law applicable thereto, not the rules prescribed by the bankrupt act, for suits brought under its provisions.

As to the third instruction asked and refused, it has been heretofore decided, that the burden of proof in a case of this kind, where the sale is attacked on the ground of fraudulent intent, is, in the first instance, on the defendant, if the proof shows a sale and delivery of the property as between the parties, and possession in the plaintiff at the time of the taking. *Derby & Day vs. Gallup*, 5 *Minn.* 136. This we think a correct rule. *Bridge vs. Eggleston*, 14 *Mass.* 250.

Evidence of Mills' statement subsequent to the sale, as to his motives in making it, was properly excluded. 4 *Minn.* 203 ; 7 *Minn.* 494 ; *Shaw vs. Robertson,* 12 *Minn.* 445 ; *Blackman vs. Wheaton,* 13 *Minn.* 326.

The statements offered, were in no way connected with the sale, and while it is true, that if the plaintiff and Mills were engaged in a conspiracy to defraud Mills' creditors, the decla-

rations of either, while carrying the common intent into execution, and in furtherance thereof, are competent evidence to affect both, (*Cuyler vs. McCartney*, 40 *N. Y.* 227) proof must nevertheless be given of the existence of such conspiracy, before such declarations can be given in evidence. *Ib.*

The defendants say that other evidence clearly establishes the fact of a combination between Mills and the plaintiff to delay or defraud Mills' creditors. However that may be, there was no such evidence in the case, when Mills' said statements were offered to be proved; none that would suffice to take the case out of the ordinary rule excluding such statements.

Billings, a witness for defendant, was asked on cross-examination this question: " Did you tell O. H. Page in the cars on the way to St. Paul last October, that you did not hear Mills say that trade was dull, and times were hard, and if his creditors would carry him over another year he could go through, or words to that effect?" to which he replied, " I did not."

Inasmuch as the witness had not stated that he did hear Mills say anything of the kind, this question was wholly collateral to the issue, and the plaintiff was bound by his answer. Nevertheless, he was allowed to prove by Page, that Billings on the occasion referred to, told him, in substance, that he did not hear Mills so state.

This was of course improper. The objection that the defendants make to Page's being allowed to testify that Billings so stated, *in substance*, seems untenable. In the way the examination was conducted, it amounted to allowing Page to state what Billings said, in substance, which would not be objectionable. *Gould vs. Norfolk Lead Co.*, 9 *Cush.* 338.

Order denying new trial reversed.