Derby & Day v. Gallup.

CHARLES DERBY and FRANKLIN O. DAY, Appellants vs. CHRISTOPHER M. GALLUP, Respondent.

### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

In an action of trover for the taking and conversion of certain goods, &c., Defendant answered, first, a general denial of every allegation in the complaint; second an admission of the taking, and justifies such taking, under process, &c., &c. *Held*—that that portion of the second plea which admits the taking from the possession of the Plaintiff, is inconsistent with the first or general denial, under the practice established by the Code; but that there is no necessity for a motion to strike out, or to compel the party to elect by which he will abide, as the denial is controlled by the admission. The Code does not contemplate that two inconsistent pleas, both of which it is absolutely impossible should be true, can be pleaded to the same cause of action. And where two defences are interposed to the same cause of action, one of which admits a part of the cause of action, that admission should be taken as true for the purposes of the action, and not the defence only, where both defences cannot be true.

In trover, the answer alleged that the property belonged to one Griggs. Upon the trial the Defendant proposed to prove by Griggs, that at the time he (Griggs) sold the property in question, one Wood was a silent partner of his, and part owner of the property. *Held*—to be inadmissible—first, because the Defendant cannot prove a different issue from the one raised by the answer—and second, if such a partnership did exist, Wood, the silent partner, is the only party who could object to the sale on that ground.

Statements made to creditors by a debtor, after a sale of his property, tending to show that the sale was made with intent to defraud creditors, will not be admitted in evidence to defeat or avoid the sale. The proof of bad faith in any manner on the part of the vendor, after the sale, (unconnected with the vendee) is objectionable. The title of an innocent vendee cannot be prejudiced by the acts or sayings of the vendor subsequent to the sale.

The general rule that a witness cannot testify as to matters of opinion, does not apply where the value of property is in question. It is presumed that the owner of property is better acquainted with its value than a stranger.

When a sale of personal property is attacked on the ground of fraud, and the Plaintiff had possession at the time of the alleged taking, the burden of proof is on the Defendant to show a better title.

The Judge should carefully refrain from stating to a jury, any opinion he may have formed as to what facts have been proved, or what credit may be due to witnesses. These matters are exclusively within the province of the jury to determine.

In actions of tort, or sounding in tort, where vindictive or exemplary damages are not claimed, the law fixes the measure of damages, which is, the legal interest on the value of the goods, from the time of the wrongful taking, to the date of trial.

The refusal by the Court to charge the jury upon an abstract proposition having no relation to the case on trial, is not a ground of error.

The views or impressions of a Court of review, upon mere matters of fact, cannot be allowed to take the place of the verdict of a jury.

Upon motion for a re-argument of this cause, *Held*—that where an application for a re-argument is made before judgment entered upon the decision rendered, the Court has the power to grant the same upon sufficient cause shown. That the applicant must be able to show some manifest error of fact into which counsel or the Court have fallen in the argument or decision of the case, as for example, that a provision of the statute decisive of the case has by mistake been entirely overlooked, or that a case has been decided upon a point not raised at all upon the argument and there be strong reason to believe that the Court has erred in its decision; or, in a case where great public interests are involved, and the case has either not been fully argued, or strong additional reasons may be urged to show that the Court has erred in its ruling.

The Plaintiff sued in the Court below, the Defendants above-named, and Wm. B. Gere and Lorenzo Allis, in trespass for taking and carrying away certain goods. On the trial the

Plaintiff discontinued as to William B. Gere. The Plaintiff had a verdict and judgment against the other Defendants, which on motion was set aside by the Court below, as to the Defendant Lorenzo Allis, and the motion for that purpose denied as to these Defendants.

From that order and judgment, the Defendants appealed to this Court.

The complaint contained two counts, one for a taking on the 15th of August, 1859, and another for a taking on the 18th of August, 1859, and alleged special damage as to each taking.

The Defendants, Derby & Day, answered,

1. A general and specific denial of each and every allegation in the complaint.

2. And " for a further defence" they allege, that about the 13th of August, 1859, the Defendants were creditors of one C. W. Griggs, and sued out an attachment against him in the United States District Court. That by virtue of said writ, and under the direction of the Plaintiffs therein, the Marshal of the Court did on the 15th of August, 1859, levy upon and take into his possession certain goods, &c. That the said goods were taken from his possession by the Plaintiffs herein by force, and that on the 18th he levied on certain goods described in the answer, which takings are alleged to be the same as those charged in the complaint. At the trial, after the Plaintiff had rested, the Defendants and each of them separately moved to dismiss the complaint, on the ground that the taking was not proven. The Judge denied the motion, and afterwards, the evidence being closed, charged the Jury that the taking was admitted by the pleadings, and that there was no question for them on the taking, to which Defendants and each of them duly excepted. Numerous points were made on the evidence and the Judge's charge, and on the whole evidence.

Points and authorities of Appellants :

*First.*—The Court below erred in holding the taking to be admitted by the answers.

(a) There were two distinct defences. The first denied the

taking, the second justifies under a process against one Griggs. These pleas have been held consistent under the old system. 1 *Burrill's Practice*, 174, 2d edition; *Chitty's Pleadings*, 561, 562 ; *Archibald's Pleadings*, 252–3 ; *Shulee vs. Page*, 11 *Johns*. 196.

Nor under the old system would a party be compelled to elect upon which plea he would place his defence. 11 *Johns*. 196.

They have also been held consistent under the Code. *Lansing vs. Parker*, 9 *How Pr*. 288; *Hackley et al. vs. Ogmun*, 10 *How. Pr*. 44; *Hollenbeck vs. Clow*, 9 *How. Pr*. 289; *Van Santvoord's Pleadings*, 521.

And the language of our Statute allows the Defendants to plead as many defences as he may have without restriction as to consistency or otherwise. *Compiled Statutes 341, Sec. 73*.

Even were it not so, the only way to have taken advantage of inconsistent pleas under any practice, was either by motion to strike out or to compel the Defendant to elect on which he would rely. *Van Santvoord's Pleadings*, 525–6. In this case no such motion was made, and thus both pleas stand.

The first denies generally and specifically each and every allegation of the complaint.

This clearly puts upon the Plaintiff the burden of proving every material allegation in the complaint. But the Defendant has another defence—to wit : property in himself or a stranger—and the Code requires separate defences to be separately stated. The Defendants consequently plead " that for a further defence," &c.

The Judge decided and charged in substance, that in this second defence, the taking put in issue by the first defence, was *conclusively* admitted ; not only holding that the second plea might be considered as *evidence* of the issues raised by the first, but that the evidence was conclusive and Defendants estopped from denying it.

(b) Now the matter of one plea could never be used even as evidence of an issue raised by another. 1 *Chitty's Pleadings*, 563.

The case of *Alderman vs. French*, 1 *Pick*. 1, appears at first sight opposed to this principle. It was an action of slan-

der, to which the Defendant pleaded, 1st. The general issue, and 2d, A special plea of justification in which he admitted the speaking of the words. The special plea was held bad on demurrer. It was held that the special plea might be used on the trial of the general issue as evidence to prove the speaking. The Court relying especially on the case of *Jackson vs. Stetson and wife,* 15 *Mass.* 48.

The Court hold in that case that in actions of slander, the two pleas are inconsistent, and yet say that slander is the only action in which pleas of the general issue and of justification are inconsistent. 1 *Pick.* 4, and the Court in that very case, cite with approbation, the language of *Ch. J. Mansfield, in Harrington vs.* ¡*MacMorris,* 5 *Taunton,* 233, " that one plea cannot be used to disprove another plea," but seems to think it not binding because he only refers to cases of *trespass,* the very action at this bar, showing that the very Court that decided *Alderman vs. French,* would have held the second plea in this case inadmissible to prove the taking. The decisions of the Massachusetts Court in *Jackson vs. Stetson* and consequently in *Alderman vs. French,* have been universally disapproved. *Gould's Pleadings,* 432-3, *note* 5, *and see specially note to Jackson vs. Stetson, in* 15 *Massachusetts.*

In *Cilley vs. Jenness,* 2 *New Hampshire,* 89, the doctrine was overruled. Justice Woodbury holding that "it was contrary to immemorial practice as well as authority." And in *Whitaker vs. Freeman* (1 *Devreux R.* 280,) Ch. J. Marshall, in overruling the doctrine, said : "It constituted no inconsiderable deduction from the authority of the decision in Massachusetts, that there is reason for the opinion that it was disapproved generally by the bar." In *Montgomery vs. Richardson,* (5 *Car. & Payne,* 247) Lord Tenterdon, C. J. said : " It would be contrary to all the practice in my experience, and I believe in that of every gentleman of the bar, to hold that the statements in a special plea may be given in evidence under the general issue." *See also* 2 *Phil. on Evidence,* 96, *note.* And the Legislature of Massachusetts afterwards by statute, altered the rule established by the Courts so as to conform to the generally received doctrine on the subject. *Statutes of Mass. of* 1826 *Chap.* 107.

Nor can it be claimed that the rule is changed by the Code. Double Pleading, as it is called, was not allowed at common law, but was permitted by Statute of *4th Anne Chap.* 16, *Sec.* 4, which authorized a Defendant " with leave of the Court, to plead *as many several matters to an action as he shall think necessary for his defence.*" *Gould's Pleadings,* 429. Our statute allows him " to set forth by answer, as many defences as he shall have."

Nor can there be an answer to this error, that after the denial of the motion, Defendants introduced evidence tending to show they might have participated in the trespass. The affidavit of Defendant Derby could only refer to the first taking and the execution, and the receipt only showed the receipt of the proceeds by Mr. Allis, as to whom a new trial has been granted. And whatever may have been the evidence, we had a right to go to the jury upon it, while the Court by its charge took the question away from the jury, and charged as matter of law that the taking was admitted.

But participation in the benefit of the act even to be *evidence*, must be "knowingly." There is nothing in the case to show that the Defendants Derby or Day ever knew of the second taking, nor indeed that they have ever received any of the money collected on the execution.

Nor can the view taken by the Court below, be supported on any principle.

The Court charged that although the denial was general, yet it should be taken as one plea, and as though the Defendants had denied *except* as thereinafter admitted. It is sufficient answer to this to say that it is untrue. The Defendants did not deny, *except*, &c. They denied without exception. And their manner of pleading is not only permitted but directed by the Code.

The style of pleading alluded to by the Court below, might be permissible when there was but a single defence pleaded ; but to hold that these two pleas are only one plea, is to confound two very different things. It is to engraft an exception upon what is absolute in its terms and in its intention. It is going even further than the case in 1 *Pickering.* That case only holds the special plea to be evidence ; The Court below would hold it a conclusive admission:

*Second.*—The Court below erred in excluding the question to the witness Griggs, as to Mr. Wood being a partner at the time of sale. *Folio* 46.

The sale was of the entire stock, not in the usual course of business, and not for the benefit of creditors, and was made by Griggs alone. Such a sale is not within the implied power of one partner, when the necessary effect of it is to put an end to the partnership. *Havens vs. Hussey*, 5 *Paige* 30 ; *Hitchcock vs. St. Johns*, 1 *Hoff Ch. R.* 511 ; *Egbert vs. Wood*, 3 *Paige*, 517 ; *Mills vs. Argall*, 6 *Paige*, 577.

*Third.*—The Court erred in excluding the question to the witness Griggs, as to what he told Gray when he settled with him. *Fol.* 54.

*Fourth.*—The Court erred in permitting Griggs to testify as to the value of property of which he had not shown himself competent to give an opinion. *Fols.* 68, 69. There is no presumption that the owner of property knows its value, and the fact is frequently otherwise, especially in this country.

*Fifth.*—The Court erred in allowing the witness Gallup to be asked whether he afterwards bought goods for the Clearwater store. *Fol.* 81. It had no relevancy to the case.

*Sixth.*—The Court below erred in excluding the testimony of the witnesses Gray and Brown, as to the circumstances of their settlement with Griggs. *See point third.* And in addition, the evidence was competent to show the insolvency of Griggs, in that he did not pay his notes in the ordinary way. *Brown vs. Montgomery*, 20 *New York*, 287.

*Seventh.*—The Court erred in excluding the testimony of the witness Raguet, as to the ordinary profits charged in the grocery business in St. Paul.

*Eighth.*—The Court erred in excluding the testimony of the witness Temple, *folio* 175, as to the custom of trade as to credit and terms of sale for goods, such as those mentioned in the bill of sale. If the transaction was of an extraordinary character, unusual credit given, or particular terms inserted, they were certainly badges of fraud and evidence of such facts was proper for the jury. The terms of sale were in evidence—the evidence offered would have shown whether they were unusual or not. For the same reasons the Court erred in excluding the questions proposed to that witness in *folio* 176, 177, 178.

*Ninth.*—The Court erred in excluding the testimony of the witness Derby as to each of the questions asked him. *Folio* 181, 182. The question as to the solvency of Griggs, was certainly material. He had testified that he was solvent, and questions had been put to him as to whether he had not said to the witness Derby things inconsistent with the idea of solvency. The questions were then competent for the purpose of impeaching Griggs.

*Tenth.*—The Court erred in charging the jury that there was some evidence as to the participation of Charles Derby in the taking on the 18th, and specially erred in charging that on that point they might take into consideration the affidavit made by said Derby to obtain the writ of attachment. *Folios* 192, 193.

*Eleventh.*—The Court erred in charging that the burden of proof was in the first instance on the Defendant. *Folios* 193, 194.

The second defence alleged in Defendant's answer was a justification of any taking by virtue of process in their favor, *as creditors* against Griggs. The complaint alleged no special title—only a general ownership.

The effect of these pleadings is that it becomes necessary for the *Plaintiff* to prove the taking *wrongful* when done by a creditor of Griggs. In other words, he must show in himself a *title* good as against Griggs' creditors. Until he does that he has not made out a *prima facie* case. It is not like a bill filed to set aside an assignment or deed as fraudulent. In such a case fraud is *the* question raised by the pleadings. The question raised here is—does the Plaintiff show a title good as against creditors of Griggs. He was not confined to showing title through Griggs, and we could not know that he would attempt to do so; but if he does claim title through Griggs, he must show a better one than ours.

*Twelfth.*—The Court erred in charging that "it was immaterial whether the kegs of gold leaf tobacco were included in the bill of sale or not. That they were described in the complaint, and the taking of them admitted by the answer, which was sufficient."

*Thirteenth.*—The Court erred in charging the jury that the

Court had figured up the amount of the valuations, and that it amounted to the sum of $1,486, and that if they believed the witnesses and found for the Plaintiff, they should find the full amount and interest. See case of *Buggerman vs. Caldwell*, decided last term, where a similar charge was held erroneous.

But the direction as to interest was certainly error. It should have been left to the discretion of the jury. *Beals vs. Guernsey*, 8 *Johns*. 446; *Kennedy vs. Strong*, 14 *Johns*. 128; *Hallett vs. Novion*, 14 *Johns*. 273, *and* 16 *Johns*. 327; *Rowley vs. Gibbs*, 14 *Johns*. 385; *Thomas vs. Weed*, 14 *Johns*. 255; *Bissell vs. Hopkins*, 4 *Cowen*, 53; *Hyde vs. Stone*, 7 *Wend*. 354.

*Fourteenth.*—The Court erred in refusing to charge that there was no evidence to show the participation of Derby, or Day, or Allis, in the taking on the 18th. This is, however, immaterial on this argument, depending as it does for its materiality upon the question whether the taking is admitted by the pleadings.

*Fifteenth.*—The Court erred in refusing to charge, "that uncommon stipulations or clauses in a bill of sale are badges of fraud," or that "uncommon or unusual circumstances or conduct in the mode and manner of making the sale or transfer are badges of fraud." *Folio* 200.

(*a*) They are *badges of fraud*, though not conclusive evidence thereof. *Burrill on Assignment*, 433, 434.

*Sixteenth.*—The Judge erred in not granting a new trial, for the verdict was grossly against evidence.

Points and authorities of Respondent:

*First.*—The general denial first contained in the amended answer of the Defendants, Derby and Day, is qualified and controlled by the subsequent portions of the answer which admit the taking, carrying away and conversion of the goods, wares and merchandise described in the complaint, and the whole answer must be taken and construed together. *Comp'd Statutes*, 543, *sec.* 88; 8 *Howard's Pract. Rep.* 356, *Roe vs. Rogers;* 4 *Sanford Rep.* 680; 6 *Howard's Pract. Rep.* 59, 312; 4 *Abbott's Rep.* 421, *Byle vs. Harrington;* 1 *Abbott's Rep.* 209;

2 *Code*, (*new series*,) *Rep.* 88, *Porter vs. McCreedy;* 2 *Abbott Rep.* 407, *Ormsby vs. Douglass;* 2 *Denio*, 96, *Conger vs. Johnson;* 14 *Barbour*, 533; *Bergfeldt vs. McClung*, &c., decided by this Court, July Term, 1860.

*Second.*—The evidence given on the trial of the cause was sufficient, independent of the admissions in the answer, to charge the Defendants with the wrongful taking and conversion. *See* 11 *Barbour S. C. Rep.* 642; 1 *Chitty's Pleadings*, 180, 80, *and notes;* 19 *Johnson's Rep.* 382, *Guile vs. Swan;* 12 *Wendell Rep.* 39, *Wall vs. Osborne;* 8 *Ib.* 594, *Morgan vs. Varrick;* 5 *Denio Rep.* 92, *Davis vs. Newkirk;* 11 *Mass. Rep.* 500, 507; 1 *Pickering Rep.* 211; 2 *Comstock Rep.* 518, *Coots vs. Darby.*

*Third.*—The answer alleges that the property taken was the property of Chauncey W. Griggs; that was the issue tendered and joined, and the evidence offered tending to show that Wood had been a partner of Griggs, was wholly inapplicable to the issue, and properly rejected. *See Bergfeldt vs. McClung, et al.* 3 *Minnesota Rep.*

*Fourth.*—The evidence offered of Griggs and Gray about the terms of their settlement, was properly excluded, and no exception having been taken to the ruling of the Court upon that point, it cannot be assigned for error here.

*Fifth.*—The testimony of Griggs as to the value of his property and solvency, at the time of the sale to Plaintiff, was clearly competent and proper. *See* 14 *Sergent and Rawle's Rep.* 137.

*Sixth.*—The testimony of Brown and Gray, offered as to the terms and circumstances of their settlement with Griggs, was properly excluded.

The subsequent acts and declarations of Griggs were not admissible evidence to prejudice and take away the vested rights of the Plaintiff previously acquired by the purchase. *See* 5 *Johnson's Rep.* 425.

*Seventh.*—The testimony of the witnesses, Raguet and Temple, offered as to the custom of trade, and ordinary profits charged in grocery business, &c., to establish a speculative hypothesis, was properly excluded. *See Kernan Rep.* 45 *Dana vs. Fielder.*

*Eighth.*—The objection made to the question put to the witness Derby relative to his conversation with Griggs, was properly sustained. *See* 4 *Denio Rep.* 502, *Howard vs. Ins. Co.;* 2 *Cowen & Hills, notes to Phillip's Evidence,* 726, 746, 748, *and* 1 *Greenleaf's Evidence, sec.* 449, *and cases cited;* 20 *Johnson,* 142.

*Ninth.*—The Court below properly instructed, that there was some evidence connecting the Defendant Derby with the taking of the property, on the 18th of August, and that upon that point, the jury might consider his affidavit to obtain the attachment. *See* 11 *Barbour's Rep.* 642, *Judson vs. Cook.*

*Tenth.*—The instruction was correct that the burden of proof, when the sale was attacked on the ground of fraud, as in this case, was in the first instance upon the Defendants attacking the sale.

*Eleventh.*—The instruction was correct that it was immaterial whether the six kegs of the Gold Leaf Tobacco were mentioned in the inventory or not, because the taking of the same from the Plaintiff's possession is admitted by the answer and proved by the Plaintiff's witness. *See* 1*st Smith's Leading Cases,* 399, 402, *Armory vs. Delemaire;* 1 *Chitty's Plead.* 171.

*Twelfth.*—The instruction given that if the jury found for the Plaintiff, he was entitled to interest upon the value of the property from the time of the taking and conversion, was correct. The Plaintiff is entitled to interest as a matter of law. *See* 2 *Comstock Rep.* 138, *Van Renssellaer vs. Jewett;* 2 *Kernan Rep.* 50, *Dana vs. Fielder;* 3 *Sandford Rep.* 614, 621, 626, 628, 646; 8 *Wendell Rep.* 505, 508; 21 *Ib.* 144; *Sedgwick on Measure of Damages,* 530, *and notes* 532, *p.* 529.

*Thirteenth.*—The refusal to charge that uncommon stipulations or clauses in the bill of sale were badges of fraud, *per se,* but that they might be considered by the jury in determining the intent with which the sale was made, was correct.

ALLIS & PECKHAM, Counsel for Appellants.

GEORGE L. & E. A. OTIS, with M. E. AMES, Counsel for Respondent.

*By the Court*—ATWATER, J.  Gallup brought an action of trover, in the District Court of Ramsey County, against Derby & Day, for the taking and conversion of certain personal property, of which Plaintiff claimed ownership and possession. The complaint alleged the value of the property to be $2,636, and that the Plaintiff had sustained special damage to the amount of one thousand dollars—asking judgment for value and damages.

The answer contained, first, a general and specific denial of each and every allegation in the complaint.

Second, for a further defence, the answer alleges, that the Defendants were creditors of one C. W. Griggs, and sued out a writ of attachment against him in the United States District Court.  That by virtue of said writ, and under the direction of {the Plaintiffs therein, the Marshal of the Court did, on the 15th of August, 1859, levy upon certain goods, and take the same into his possession, &c.  That said goods were taken from his possession by the Plaintiff by force, and that, on the 18th of August, he levied on certain goods described in the answer, which takings are alleged to be the same as those charged in the complaint.  There was a verdict for the Plaintiff, on which judgment was entered and motion made to set aside the same, which was denied.  Defendants appeal from the order denying the motion, and judgment.

The first question presented, is as to the admissibility of the two separate defences set up in the answer.  The Judge charged the jury that the taking was admitted by the pleadings, to which the Defendants excepted.  If both defences can stand, it is evident the charge was erroneous, otherwise, it was correct.

These pleas are clearly inconsistent with each other.  Under the old system of pleading, cases may be found where analagous pleas have been sustained.  In *Shulee vs. Page*, 11 *John.* 196, *non cepit*, and property in the Defendant was pleaded in action of replevin.  The pleas were sustained—the Court, in its opinion, not deciding the pleas were not inconsistent, but stating that, " Courts have allowed pleas, in many instances, apparently as inconsistent as those in the present case."  Even

under the old system of pleading, it is difficult to perceive how such a plea could be sustained. But the cases in which similar pleas have been sustained, have arisen under statutes (so far as we have examined,) similar to that of 4 *Anne*, 16, *sec.* 4, which provides that "it shall be lawful for any defendant or tenant, in any action or suit, or for any plaintiff in replevin, in any court of record, with leave of the court, to plead as many several matters thereto as he shall think necessary for his defence." The Code does not authorize such pleading, nor any fictitious pleading; and the decision of this question must depend upon the construction to be given to the provisions of the Code on the subject of pleading.

The authorities under the Code upon this point are conflicting. Among those sustaining the principle here contended for, see, *Lansing vs. Parker*, 9 *How. Pr.* 288; *Hollenbeck vs. Clow*, *Ib.* 289; *Hackley et al. vs. Ogmun*, 10 *How. Pr.* 44; *Stiles vs. Comstock*, 9 *Ib.* 48. And *contra*, *Roe vs. Rogers*, 8 *How. Pr.* 356; *Arnold vs. Dimon*, 4 *Sand.* 680; *Schneider vs. Schultz*, *Ib.* 664; *Lewis vs. Kendall*, 6 *How. Pr.* 59; *Ormsby vs. Douglass*, 2 *Abbott's Rep.* 407. It is not difficult to understand how these contradictory decisions have occurred under the Code. They are the result, on the one hand, of a desire to adapt the former system of pleading to the provisions of the Code, and to recognize the binding force of authorities under that system; and on the other, to make the present system of pleading conform to the provisions of the Code in its spirit as well as letter, ignoring, if need be, to effect this object, decisions which might have weight under the former system. And I cannot but here remark, that had there been a disposition manifested by all the Courts, in the States where the Code has been adopted, to co-operate in giving full force and effect to the changes introduced by it, instead of adhering with such pertinacity to the former system, and hampering the new with restrictions contrary to its manifest intent, the Code would have become more effective in the administration of justice, or, at least, its merits and demerits would have been more satisfactorily tested. It may still be an open question whether the system embraced in the Code shall prove more successful in eliminating truth from error than that which

formerly obtained, but so long as it prevails it should be administered by the Courts in accordance with its letter and spirit, and so as to carry out, as far as practicable, the intent of its framers.

Referring then to the Code, we find that one of the most important changes effected by it, is the abolition of all fictitious pleading, and requiring facts to be stated, whether as constituting the cause of action, or ground of defence.  In regard to the complaint the principle is stated in direct terms, the Plaintiff being required to state " the *facts* constituting the cause of action;" and, although the language in regard to the answer is not precisely the same, yet it is entirely clear that the intent of the Code is to allow the Defendant to plead only the facts constituting his ground of defence.  For it is not to be supposed that any advantage is to be given to the Defendant over the Plaintiff in pleading, and the answer is required to be verified whenever the complaint is.  The paramount object of the change effected by the Code is, to require truth in pleading.  If this could be completely attained, much of the cumbrous machinery of Courts could be dispensed with, jury trials would no longer be necessary, and nothing would be required save the application of principles· of law to the facts stated.  But if absolute truth in pleading be unattainable, Courts may at least prevent parties from spreading upon the record pleas which prove their own falsity, or from deriving advantage from such as are inconsistent with themselves.  It is true the Code provides, that " the Defendant may set forth by answer as many defences as he shall have ;" but this provision must be understood with the restriction that those defences must be true—that they must be such as the facts to be proved will sustain.  The object of the provision is not to enable the Defendant to defeat the action at all hazards, but to afford him the opportunity of pleading such facts as actually exist, or can be proved, constituting a defence.  To hold otherwise, would be in direct conflict with the manifest intent of this system of pleading, and lead to the most serious abuses.

In the case at bar, the Defendants have denied, in the first place, every allegation of the complaint, thus putting in issue

both the right of property in the Plaintiff, and the taking of the goods by the Defendants. This plea, if true, constitutes a perfect defence to the action. The taking of the goods constituted the gist of the action, and from the nature of the case the Defendants must know whether the plea denying the taking was true or false. If true, no other defence was necessary, and even had another or others existed, consistent with this, it would but have encumbered the record with useless issues to plead them, though in such case permissible.

But the Defendants, in their second plea, expressly admit the taking the goods, alleging them to belong to one Griggs, and justify the taking under process. The only part of this plea, inconsistent with the former, is that in relation to the taking of the property. The allegation that the property belonged to Griggs, and that in regard to the value, are not in conflict with the previous denials. But in regard to the taking, it is obviously impossible that both pleas should be true, and no process of legitimate reasoning can make them appear consistent. If the same weight is to be allowed to the admission, as to the denial of the taking, it leaves them equally balanced, or rather, the one would destroy the other, leaving the charge in the complaint undenied. But in fact, the admission of the taking is entitled to more weight than the denial, for it is a familiar rule of pleading, that each party's pleading is to be taken most strongly against himself, and most favorably to his adversary. And thus, I think, the plaintiff is entitled to the benefit of the admission of the taking, as the pleas stand, and that there is no necessity for a motion to strike out, or to compel the party to elect by which he will abide.

The reasoning by which, in the cases above cited, similar pleas have been sustained, is to my mind entirely unsatisfactory, and ignores the true principles of pleading, as established by the Code. The learned Justice (Shankland) who delivered the opinion in *Stiles vs. Comstock*, has made an able plea for the Defendant, and showed, perhaps, that the principle there contended for was recognized under the old system, though his argument seems entirely to overlook the idea that truth is essential to a pleading under the Code. He supposes that

the Plaintiff may *prove* a cause of action which never actually existed, and that the Defendant should be permitted to frame his plea to meet such supposable case, and also to deny the actual existence of the fact alleged. It is, perhaps, sufficient to remark, that general rules of pleading, cannot be framed to meet these extreme and exceptional cases; and that, although a case might be supposed where a Defendant would suffer injury by the commission of perjury against him, the evil would be far greater to allow him to deny an actual fact, and yet to derive the same advantage from a plea admitting the existence of the fact. I cannot perceive on what principle this rule of pleading can obtain, unless it be held that the Code was designed to furnish the Defendant with the means of defeating his adversary, *per fas aut nefas.* We have to some extent recognised the rule here adopted, in *Mason & Craig vs. Heyward,* 3 *Min.* 182, and *Bergfeld vs. McClung,* &c., 4 *Min.* 148.

Upon the trial of the action Griggs was a witness, and the Defendants proposed to prove by him that at the time of the making the bill of sale of the property from witness to Plaintiff, one Wood was a silent partner of witness, and part owner of the goods mentioned in the bill of sale, for the purpose of showing that Griggs had not the right of selling the property. But the answer alleges that the property belonged to Griggs, and not to Griggs and Wood, and he should not be permitted to prove a different issue. And for another reason the proof is inadmissible, as, if the partnership existed as claimed by the Defendants, Wood is the only party who could object to the sale on that ground. The evidence was, therefore, properly excluded.

Upon the trial of the cause it appeared that Griggs, after the sale of the property in question to the Plaintiff, had made settlements with certain of his creditors, and, as alleged by Defendant's counsel, had made statements at the same time to them respecting the sale. These statements the Defendants offered to prove by the witness, for what purpose does not appear by the offer, but for no other object, we presume, than to show that the sale was made by Griggs with the intent to defraud creditors. The evidence was excluded by the Court,

and we think properly. There is some conflict in the authorities as to whether such statements are proper evidence, but the weight of authority is against the admission of such evidence, and this Court has so held in the case of *Burt vs. McKinstry and Seeley*, decided at the July Term, 1860. It is claimed, however, that the fact of the settlement itself was proper evidence, and that the statements made at the same time were proper as a part of the *res gestæ* of the settlement. If the purpose of showing the settlement be to prove the fraudulent intent of the vendor, then the proof of that fact is open to the same objection that applies to the proof of the statements of the party, for the objection is to the proof of the existence of bad faith in any manner on the part of the vendor after the sale, (unconnected with the vendee,) and not to the particular *manner* of proof. The object of the rule is to prevent any prejudice to the title of an innocent vendee from acts or sayings of the vendor subsequent to the sale. And was the object of the proof of the settlements by Griggs any other than that above referred to, the proof of his statements in the same connection would not be proper, unless expressly limited to the same purpose as that for which the settlements were shown.

In the course of the examination of Griggs he testified to the value of certain real estate owned by him, which was objected to by Defendant's counsel, on the ground that he had not shown himself competent to give an opinion as to the value of the property. The objection was overruled, and we think properly. In *Joy vs Hopkins, 5 Denio*, 84, it is held, that the rule that a witness cannot, in general, speak to matters of opinion, does not apply where the value of property is in question. See also, *Lamoure vs. Caryl, 4 Denio*, 370; *Brill vs. Flagler, 23 Wen.* 354; *Culver vs. Haslam, 7 Barb. S. C.* 314; *14 Serg. & Rawle*, 137. From the nature of the case the jury must ordinarily form their opinion as to the value of property more or less from the opinion of witnesses, as it would often be difficult, if not impossible, to make such statement of facts in regard to the value, as would suffice to enable them to form a correct judgment. And the presumption is, that the owner of property is better acquainted with its value

than a stranger.  The evil sought to be prevented, by the rule
excluding opinions, will rarely prove of serious consequence,
in cases of this nature, from the admission of such evidence.

. The Plaintiff, who was a witness upon the trial, was asked
whether he purchased goods after the sale to him by Griggs,
·for a store in Clearwater, which he was carrying on.  This
was objected to by the Defendants as immaterial, but admitted
by the Court. . The testimony to be elicited from this question
would not seem particularly relevant to the issue, though it
might possibly be considered by the jury as a circumstance
tending to show the good faith of the Plaintiff in his purchase
of the goods in question.  If so, we see no objection to its
admission, and, at all events, cannot see how the Defendants
could be prejudiced by it in any other manner.

The Defendants, on the trial of the cause, offered to show
`by a witness that the ordinary profits charged in the grocery
business at St. Paul were twenty-five per cent.  This testimony
was objected to and excluded, and exception taken by the
Defendants.  There was also an offer to show the amount of
capital necessary to carry on such business, which was also
excluded.  The object of this testimony was doubtless to show
fraud in the purchase of the goods by the Plaintiff.  But we
think the testimony too remote for such purpose.  If the
amount of profits were as claimed by the Defendants, and it
was also true that the Plaintiff had no capital, the sale would
not therefore be *per se* fraudulent.  Nor would those facts
alone be proper subjects of comment before a jury, and from
which they might infer the sale fraudulent.  The business
qualifications of the Plaintiff, the credit he might before have
possessed, or which he might have acquired by the possession
of such a stock of goods, his ability to procure assistance from
friends, and various considerations which might be named,
would have to be taken into account in connection with such
testimony, and would open up such a broad field of inquiry as
would be almost interminable, and, even if pursued, would
furnish evidence of the most unsatisfactory nature, so far as its
bearing upon the issue of the ownership of the goods was
concerned.

And the same objections apply to the offer of the Defendants,

to show by the witness Temple "what was the general custom of trade in the summer of 1859, at St. Paul, as to credit and terms of sale upon the class of articles mentioned in Grigg's bill of sale." And, beside, the facts in regard to the sale from Griggs to the Plaintiff, as disclosed by the case, do not show that the sale was made in the ordinary course of business, but that it was the sale of an entire stock of goods, and included many other articles of personal property not included in an ordinary stock of merchandise, as horses, wagons, leasehold estate, &c. If the conditions of this sale, therefore, were not in accordance with the usual terms of sale by merchants, it would not be a circumstance affecting its validity, and consequently the evidence was properly excluded.

Charles Derby, one of the Defendants, was examined as a witness, and a series of questions put to him by his counsel, the object of which was to contradict Griggs, as to certain matters testified to by him on his cross-examination. These questions were properly excluded by the Court, as the testimony sought to be impeached was itself upon immaterial and collateral matter, and such that the Defendants must be bound by the answer of Griggs. It related to conversations of Griggs about the sale, and subsequent to it, which we have seen could not be received to invalidate the title of the Plaintiff.

The Court charged the jury that "the burden of proof, in a case of this kind, where the sale is attacked on the ground of fraudulent intent, is, in the first instance, on the Defendant, especially if the proof shows a sale and delivery of the property as between the parties." To this charge the Defendants excepted.

I am not prepared to say that this charge would be strictly correct, without the qualification that the property, at the time of the taking, must have been in the possession of the Plaintiff. But as the complaint alleges that the property was both owned by, and taken from, the possession of the Plaintiff, and this is not denied by the answer, (except by that part held inadmissible,) the pleadings supply whatever imperfection there may have been in the charge, and the Defendants are not prejudiced by it. Possession itself is *prima facie* evidence of title, and sufficient to sustain the action. And it is for this reason

that the further charge of the Court, which was excepted to, was correct, to wit, that "it was immaterial whether the kegs of gold leaf tobacco were included in the bill of sale or not. That they were described in the complaint, and the taking of them admitted by the answer, which was sufficient." The goods having been in possession of the Plaintiff, he is not bound to show any other title until the Defendants have shown a better.

The Court further charged, "that there was no material difference between the valuations of the witnesses, Griggs and Gallup. That the Court had figured up the amount of the valuations, and that they amounted to the sum of $1,486, and that if they believed the witnesses, and found for the Plaintiff, they should find the full amount, with interest"—to which the Defendants excepted.

This portion of the charge was objected to, on the ground that the Court had no right to state to the jury that "he had figured up the amount," &c.; and, also, that the direction as to interest was erroneous. We hold it highly desirable, as we have before had occasion to remark, that the Judge should carefully refrain from stating to a jury any opinion he may have formed as to what facts have been proved, or what credit may be due to witnesses. These are matters exclusively within the province of the jury to determine. And in this case the Court has closely trenched on the rule, if he has not overstepped it. And had it been urged, or rather, had there been good ground for urging, that the fact was not as stated by the Court, and that the jury could have arrived at any materially different result by figuring the amount themselves, it would have formed a proper ground for the interference of this Court. But such is not the case. From an examination of the valuations, as testified to by the witnesses, we find the Court was correct, or nearly so, as to the total value of the goods. And as there was no conflicting testimony on the subject, the jury must have found the same amount, "if they believed the witnesses." Consequently the error complained of has not prejudiced the Defendants, and is not, therefore, ground for a new trial.

We also think the correct rule of damages was stated by

the Court; to wit, that the Plaintiff was entitled to interest on the value of the goods from the time of the taking by the Marshal. Some of the earlier cases seem to hold that in actions of tort, or sounding in tort, damages, even to the extent of legal interest, were entirely in the discretion of the jury. But the later authorities hold a different doctrine, and where vindictive or exemplary damages are not claimed, the law fixes the measure of damages, which is legal interest on the value of the goods from the time of the wrongful taking to the trial. In New York and Massachusetts this rule has been recognized for many years in actions of trover. (*Hyde vs. Stone*, 7 *Wen.* 354; *Baker vs. Wheeler*, 8 *Wen.* 508; *Bissil vs. Hopkins*, 4 *Cow.* 53; *Van Renssaleer vs. Jewett*, 2 *Com.* 135; *Suydam vs. Jenkins*, 3 *Sand.* 614; *Dana vs. Fielder*, 2 *Kernan*, 50; *Kennedy vs. Whitwell*, 4 *Pick. Rep.* 468.) As this action corresponds to trover under the former system, these authorities are in point. In replevin, the rule as laid down by *Sedg. on Dam.*, *p.* 523, is, " that where the Defendant succeeds, and has a judgment in his favor, he is entitled to damages; and the value of the goods at the time of the replevin, with interest, forms a proper measure of damages." Our statute, however, expressly provides that the jury shall assess the damages in that action. In regard to actions of trespass the same author says, *p.* 549, that " it has been often decided that where trespass is brought for personal property, and no circumstances of aggravation are shown, that the action is to be regarded as one of trover, and the value of the property, with interest, forms the measure of damages." If the rule is not thoroughly settled, it is high time it was, for it would be gross injustice to allow the party who has been proved guilty of a wrongful taking and conversion of property, to have the use of the same during, perhaps, years of litigation, and then escape with paying the rightful owner the bare value of the property at the time of the taking, if the jury should choose so to find. Such a rule would amount to scarcely less than the offering of a premium for the commission of wrong, since, under the law at present, he would not even suffer the trifling inconvenience of paying his adversary's costs.

The further objection is made, that the Court erred in

refusing to charge, "that uncommon stipulations or clauses in a bill of sale are badges of fraud," or that "uncommon or unusual circumstances or conduct in the mode and manner of making the sale or transfer are badges of fraud." As the bill of sale is not found in the paper book prepared for the Court, so far as appears, this was a request to charge upon an abstract proposition, having no relation to the case on trial, and, therefore, the refusal to charge as requested, was not error. If, however, it were true that the instrument was liable to the objections implied in the request to charge, we think the actual charge of the Judge, on that head, was as favorable to the Defendants as the law would justify.

As to the objection that the verdict was against evidence, and that a new trial should be granted on that ground, it certainly has much show of reason, and has received careful consideration. The whole transaction has a strong odor of fraud, and it may well seem surprising that the jury should have sustained the conveyance. But the rule has been too long and thoroughly settled, that the views or impressions of the Court, upon these matters of fact, cannot be allowed to take the place of the verdict of a jury, and we do not think the case at bar is sufficiently flagrant to make it an exception to the rule. The authorities on this point are so numerous and familiar that it is unnecessary to cite them. The rule itself is a salutary one, and founded in sound reason; and if the time arrives, or has arrived, when the attainment of justice is impeded or prevented by the operation of this rule, it will be safer to seek a remedy by legislation, than for the Courts to override a uniform series of decisions, whose authority has been recognized almost from time immemorial.

The judgment below is affirmed.

At the July Term, 1861, the Appellants moved for a re-argument of this cause, upon grounds stated in the following opinion, denying the motion, by *Atwater, J.*

This is a motion on the part of the Appellants for a re-argument of a case decided at the December Term, 1860. The application is based upon an affidavit of the counsel for

the Appellants, setting forth, in substance, that, upon the argument of the cause, at the said Term, owing to an intimation of a member of the Court the counsel did not argue an important point in the case, supposing that the Court did not desire an argument upon it. That, in the decision of the case, the Court held against the view entertained by the Counsel, and, as he believed, the decision upon that point (as well as others) was erroneous. This application is made before judgment entered upon the decision rendered, and we have no doubt but that the Court has the right, in such case, to grant or order a re-argument, in case sufficient cause is shown therefor.

We have hitherto had no occasion to establish a rule by which parties may be governed in an application for a re-argument of a case which has been once heard and determined by this Court; and it is, perhaps, impossible to lay down a general rule which shall be applicable to every case that may arise. But we may say, in general, that the applicant must be able to show some manifest error of fact, into which counsel or the Court have fallen in the argument or decision of the case; as, for example, that a provision of statute decisive of the case has, by mistake, been entirely overlooked by counsel and the Court; or, perhaps, that a case has been decided upon a point not raised at all upon the argument, and there be strong reason to believe that the Court has erred in its decision; or, unless, in a case where great public interests are involved, and the case has either not been fully argued, or strong additional reasons may be urged, to show that the Court has erred in its ruling. But where a question of law has once been fully discussed on the argument, and considered by the Court, we cannot admit that a party is entitled to a re-argument, on the ground that there is manifest error in the decision. We are not aware that any Court has sanctioned such a practice, and it would be attended with inconveniences and evils far over-balancing the advantage accruing in the particular instance.

We do not think the principal fact on which the counsel for the appellant in this case relies for a re-argument is sufficient to entitle him thereto. We do not say that, where the Court, upon the argument of a particular point, intimate or state to

counsel that they are so well satisfied with the correctness of his view that no further argument is desired, and counsel upon such statement abstain from argument, it would not furnish ground for an application for a re-hearing, where the case was decided adversely to the position of counsel upon such point. But where the Court does not interfere, counsel must argue their causes as fully as they may be advised is necessary, and cannot properly claim that they are misled or prevented from having a full argument by the expression of an individual opinion on the part of some one member of the Court. As the counsel for the Appellants, however, has been permitted to present an elaborate brief on this motion for a re-argument, in which the merits of the case are discussed, the Court is enabled to state that, in the decision of the case, it did fully consider the point spoken of in the affidavit of the counsel; and, upon a further examination of the argument now presented, is satisfied that the decision of the case was correct, although, upon one point, the reason assigned may have been erroneous. And, in view of the full argument had upon this motion, it is deemed proper to advert to some of the positions assumed by counsel, and further explain the views of the Court upon one or two of the main points involved in the case.

The counsel for the Appellant has made an elaborate, though we think wholly unsuccessful, argument to prove that the two defences set up in the answer are not inconsistent with each other. Because the Code allows several defences, he seems to think the Defendant entitled to them in every case; and where (as in this case,) the confession required by a rule of law, in order to plead one, would conflict with a denial in the other, he endeavors to show that the confession is no part of the defence, and should be disregarded by the Court. The admission of the taking of the goods, in a plea of justification, he regards as wholly technical, and would only have that part of the plea which justifies the act regarded by the Court. This is a somewhat novel and ingenious attempt to avoid that provision of the Code which requires truth in pleading, but to my own mind wholly inconclusive and unsatisfactory. Whether or not the reasoning, in the opinion on file in this case, be sufficient to show that these defences are inconsistent,

each can judge for himself, and it is not proposed here to renew the discussion. The Court, after a full examination of the subject, was then, and still is, satisfied that the defences are totally inconsistent in fact, even if it has not been successful in convincing others, and will act in accordance with that view in all cases where the same question may hereafter arise, and require the adjudication of this Court. I cannot assent to the proposition of the counsel, that the confession in a plea of justification was only technical, even under the old system of pleading, much less under the Code, but think it entitled to the same weight as the part in avoidance, and for reasons founded in the most evident principles of justice. If Courts, acting under the Code, are to permit two such defences as are here interposed to stand, it were better at once to disclaim all intention of being governed by or carrying out its provisions, and either return at once to the old system of pleading, or administer justice and equity as the exigencies of each particular case may seem to require.

If we understand the statements of the counsel for the Appellants he insists that the two defences here set up, to wit, the denial that the Plaintiff was in possession of the goods, and that the Defendants took the same, and the admission of such possession and taking, are in harmony with each other, and that both may be true at the same time. It may be the misfortune of the Court that it cannot see the matter in the same light as the counsel, but a careful examination of his brief has failed to convince us of the correctness of his position. And we cannot but think that the natural, and perhaps commendable anxiety of the learned counsel to shield his clients from an injury which, in this particular case, might in part result from the application of what the Court deem the correct rule, has led him into a course of reasoning which in other circumstances he would scarcely have adopted.

In the opinion of the Court, filed in this case, the remark is made, that "the taking of the goods is the gist of the action." This proposition is controverted by the counsel, who asserts that the gist of the action, as defined by Greenleaf and Chitty, is, in an action of trespass, "the injury to the possession." We can scarcely conceive any proper object or worthy motive

for a criticism of this kind, which is untrue in fact. While, as a general proposition, the definition above given by the elementary writers is doubtless true, it is equally true that, *in this case*, the gist of the action is as stated by the Court, since in this case the injury to the possession is solely occasioned by the taking, and no other injury is complained of. Doubtless cases may arise where the injury would be occasioned from other causes, as from the wilful destruction of the property, and, in such cases, the injury to the possession would not result from the taking, and then, of course, that would not constitute the gist of the action. The statement referred to is therefore believed to be strictly correct as applied to this case, although not sufficiently comprehensive to serve as a general definition.

The counsel for the Appellant urges at considerable length that this Court erred in holding that the admission of the taking in the second plea should control the denial of the taking in the first, and that one plea cannot be used to aid or vitiate another, but that each must stand or fall on its own merits. That such was the rule under the old system of pleading is doubtless true, and that it is also true under the Code, to a certain extent, may be admitted, but where the reason for the rule fails there can be no ground for the application of the rule itself. And in order to determine the reason for this rule, it will be necessary to examine how that system of pleading grew up which gave rise to the rule spoken of.

In the case at bar it will be remembered but one cause of action is stated. Now at *common law* a Defendant could not plead several distinct pleas to the same declaration or a part thereof. (*Chit. Pl. vol.* 1, 560.) But it was found that this rule "often led to much inartificial and repugnant pleading," which led to the enactment of the *Statute of 4th Anne, chap.* 16, *sec.* 4, by which it was provided, "that it shall be lawful for any defendant or tenant, in any action or suit, or for any plaintiff in replevin, in any court of record, with the leave of the Court, to plead as many several matters thereto as he shall think necessary for his defence." It was doubtless supposed that an abuse of this rule would be prevented by imposing costs when such pleas were held insufficient, or when a verdict

should be found for the Plaintiff upon them, unless the Judge who tried the cause should certify that the Defendant had probable cause to plead such matter. But under this statute the Defendant, in many actions, was not permitted to plead contradictory defences, as "*non assumpsit,* or *non est factum,* to the whole declaration, and a tender as to part, for one of these pleas goes to deny that the Plaintiff ever had any cause of action, and the other absolutely admits it to the extent of the sum tendered." The Courts, however, at length either found themselves powerless to prevent the abuses in pleading which crept in under this statute, or intentionally extended the rule so as to permit contradictory defences, until the only pleas uniformly disallowed, on the mere ground of inconsistency, appear to be those of the general issue and a tender— though the use of several pleas was presumably intended by the statute to be allowed only in a case where there were really several grounds of defence. (*Steph. on Plead.* 273.)

Now it is in reference to these different pleas, *allowed by the statute referred to,* that the elementary writers state that one plea cannot be taken advantage of to help or vitiate another. The reason of the rule we do not find stated by Chitty, but he states the proposition in treating of the proper method to plead the several defences allowed by this statute. Now, if the rule that one plea cannot aid or vitiate another, originated anterior to the passage of the statute of the 4th Anne, it cannot have been intended to apply to defences such as are found in the case at bar, since, previous to the enactment of that statute, but one such defence was allowed to the same cause of action. And if it originated subsequent to that statute, and is intended to apply to such defences as are here interposed, its application can only be claimed by virtue of the statute allowing such defences. And if our system of pleading is at variance with that authorized by the statute referred to, I see no reason or authority for the application of the rule in this case.

In regard to the practice of moving to strike out inconsistent pleas, (which the counsel contends was the only course proper, if the pleas are held inconsistent,) it is still more apparent that it took its rise under this statute above cited. It will be remembered that the statute provided that these defences

might. be pleaded with leave of the Court, and at first this leave was actually obtained, although, after a time, this was dispensed with, and the statement omitted from the plea. But, says *Chitty, vol.* 1, 562, "when however the various pleas are clearly repugnant, and would create unjust delay, the Court will sometimes rescind the rule to plead double, and compel the Defendant to rely on one of his pleas." And again, "before the recent rules, when several pleas were pleaded under the statutes, each second and subsequent plea should, in strictness, in the introductory parts of each, have stated that the same was pleaded by leave of the Court first had and obtained; but the omission, though untechnical, appears to be no cause of demurrer. ·If, in fact, no leave had been obtained, the proper course was either to sign judgment or to apply to the Court to strike out all but one of the pleas." And as the liberty to plead several pleas was confined to Courts of Record, so it was held that in the County Court and other inferior Courts not of Record, " if the Defendant plead two or more pleas to the same part of the declaration, the Plaintiff may demur for duplicity, or treat the second. plea as a nullity, and proceed to trial on the first." (*Ch. Pl.* 1, 560.) Thus we see that if these defences were interposed without authority of statute, or not in the manner provided by statute, whether in the Courts of Record or otherwise, the Plaintiff was entitled to disregard the· plea, and was not put to his. motion to strike out unless he saw fit. In this country, where leave of the Court has not generally been required, by the similar statutes which prevail with reference to pleading, the practice has obtained of moving to strike out inconsistent pleas. But if the Code does not in fact allow such pleading as is permitted by the statutes under consideration, no logical deduction can be drawn that the same practice is to prevail under the former as the latter with reference to inconsistent pleas.

The reasoning of the counsel for the Appellant, with reference to the rule that one plea cannot be used to aid or vitiate another, seems to be based upon the assumption that the Code has not changed the rule of pleading defences. His language is, "Nor can it be claimed that the rule is changed by the

Code. Double pleading, as it is called, was not allowed at common law, but was permitted by statute of *4th Anne, chap.* 16, *sec.* 4, which authorized a Defendant, "with leave of the Court, to plead as many several matters to an action as he shall think necessary for his defence." *Gould's Pleadings*, 429. Our statute allows him to "set forth by answer as many defences as he shall have." That is, as we understand the argument of counsel, the Defendant may plead as many defences to the same cause of action as he shall see fit, even though they are inconsistent or contradictory. If he is incorrect in this view, the basis of his argument fails, and his authorities are not applicable to this case.

We have no doubt but that the Code has changed the rule of pleading defences, and that the view entertained by the counsel on this subject is incorrect. It is true it has not restored the rule which obtained before the statute of 4th Anne was enacted, since more than one defence is still allowed to the same cause of action. But there can be no doubt that one of the chief objects contemplated by the change, was to correct the glaring abuses which sprung up and finally obtained a firm foothold under the statute referred to and others of a similar nature, and that it was never for a moment contemplated by the framers of the Code that two inconsistent pleas, both of which it is absolutely impossible should be true, should be pleaded to the same cause of action. And if this system does not allow this method of pleading, then decisions of similar questions, based on an entirely different system, cannot serve as authority in this case. And, as we have seen that under the statute referred to, if pleas were interposed in a manner different from that prescribed by statute they might be disregarded, without moving to strike them from the record or to compel the party to elect, so we see no reason why the same practice should not prevail under the Code. Or where, as in this case, there are two defences interposed to the same cause of action, one of which admits a part of the cause of action, that admission should be taken as true for the purposes of the action, and not the defence only, where both defences cannot be true.

The Code requires truth in pleading, and where the falsity

of a plea appears on the face of the pleading, it will not be permitted to stand. Where an allegation of the complaint is not denied by the answer, it is for the purposes of the action to be taken as true, and where a Defendant has expressly admitted an allegation, we do not think he can complain if credit is given to the admission, or rather more credit than to his denial of the same allegation; since the denial of the possession or taking formed a perfect defence, and, if true, no cause of action could be established against the Defendants, except upon false testimony, which, in a case of this kind, it would be obviously almost impossible should be given. Whereas the defence which the admission enabled the Defendants to interpose, threw the whole burden of proof on to them, and, at best, is one difficult to maintain, and more especially so in the present condition of the country than perhaps it has formerly been. We do not, however, hold that from an inspection of the pleas the Court could positively decide which was true and which false, but that the denial is controlled by the admission, for the reasons herein above stated. And the reason assigned in the former opinion (we may here take occasion to state, to prevent misapprehension,) for holding the admission of the taking entitled to more weight than the denial, was erroneous. That reason was, that the pleading of a party is to be taken most strongly against himself. The rule itself is doubtless as true under the Code as the former system of pleading, but not correctly applicable to the case at bar.

There was also an inadvertent statement in the opinion, as to a matter of fact, which may properly be corrected. It was stated "that the admission of the taking is the only inconsistency between the two pleas." This we think erroneous, as the possession of the Plaintiff is also admitted—that is, it is not in terms admitted in the plea that the property was taken from the possession of the Plaintiff, but implied in the admission in the answer, that the taking admitted in the answer is the same taking alleged in the complaint. In order to set up this plea of justification, the Defendant was required to admit the possession as well as taking, as appears from *Brown vs. Archer*, 1 *Hill*, 267, cited by Appellant's counsel.

As the points sought to be raised on this re-argument have been fully considered and decided by the Court, at the last Term, the motion must be denied.