JAMES SCOTT, Respondent, *vs.* LYNCH R. KING, Appellant.

APPEAL FROM THE DISTRICT COURT OF WINONA COUNTY.

Upon the trial of an issue of fraud in the making of a voluntary assignment for the benefit of creditors, it is error to admit evidence of the mere declarations or admissions of an agent of the assignor, made prior to the assignment and not within the scope of his agency, to prove the intent with which his principal subsequently made an assignment; nor are such declarations or admissions evidence of the intent, though made after the assignment, and while holding possession of the property assigned, as the agent of the assignee.

Evidence of the acts, declarations or admissions of a witness, inconsistent with his statements on the stand, cannot be received to discredit his testimony, without his attention has first been called to the particular act, declaration or admission which *it is intended* to prove.

BERRY & WATERMAN, and SARGEANT & FRANKLIN, Counsel for Appellant.

NORTON & MITCHELL, Counsel for Respondent.

*By the Court*—EMMETT, C. J.—This is an action brought to recover the possession of certain personal property. The complaint alleges that the Plaintiff has a special property in

Scott v. King.

the goods in question, by virtue of a deed of assignment for the benefit of creditors, made on the 11th day of April, 1861, by one Phillip N. Griffin, who was then the owner thereof. That the Defendant afterwards, on the 30th day of April, 1861, wrongfully took, and still wrongfully detains said property, although possession thereof has been demanded of him by the Plaintiff, before the commencement of the action. The answer first denies each and every allegation of the complaint, and then admits and justifies the taking complained of, under and by virtue of a warrant of attachment issued against the property of Griffin, the assignor, who, the Defendant alleges, was at the time the owner. The answer further denies that the Plaintiff had any special property in the goods taken, by reason of said assignment, and alleges that if any such assignment was made as alleged, it was made by said Griffin with intent to hinder, delay and defraud his creditors, and that the parties at whose instance the said attachment issued, were his creditors at the time it was made. The reply puts in issue all the allegations of new matter contained in the answer.

The sweeping general denial of the answer is inconsistent with the special matter of justification afterwards set up, but considering this denial as qualified by the subsequent allegations, according to the rule adopted in *McClung vs. Bergfeld*, 4 *Minn.*, 148, *and Derby & Day vs. Gallup*, 5 *Minn.*, 119, the answer amounts to this: The Defendant admits the taking and detention complained of, but denies that it was wrongful ; because, he says, that if Griffin made the assignment alleged, he made it with intent to hinder, delay and defraud his creditors.

There was no evidence introduced on the trial showing or tending to show any direct fraudulent intent in making the assignment. On the contrary the assignment is fair upon its face, and appears to have been made in strict conformity with the provisions of the statute of the State of New York, where it was executed, and where the parties and most of the property were, at the time. The assignor is shown to have done all that was required of him to make the assignment valid, and to pass his interest in the property, according to the laws

of that State; and the assignee all that was necessary by said laws, to authorize him to take possession of, sell, dispose of, and convert the property assigned to the purposes of the trust.

The case, as we infer from the evidence introduced by the Defendant, and from the charge of the Court to the jury, was made to turn principally upon the question of·possession, at the time of levying the attachment, under which the Defendant justifies. And looking at the pleadings alone, it might well be doubted whether the Defendant has so stated the facts constituting his defence, as to put the fact of delivery of possession to the assignee in issue. Certain it is that the Plaintiff is not directly advised, that the Defendant would rely upon this particular defence. The only foundation for this issue, is found in the denial of the answer that the Plaintiff acquired by reason of the execution and delivery of the deed of assignment, any special property in the goods attached. But as this denial is immediately followed by the allegation, that the assignment was made, if at all, with intent to hinder, delay and defraud creditors, and as the retaining of possession by the assignor, of the property assigned, is presumptive evidence of such fraudulent intent, evidence of non-delivery might perhaps have been received on the question of intent. Still I cannot think that the spirit of the rule of·pleading established by our code, which requires parties to state the *facts* constituting their claim or defence, has been complied with in this case. The object of the rule is to arrive at the particular facts upon which the claim or defence rests, and I can readily see that it was possible for the Plaintiff to have been completely surprised by the testimony introduced by the Defendant, touching the possession at the time the property was taken by the Defendant.

The Plaintiff, to prove the issues on his part, introduced an exemplified copy of the deed of assignment, and of the record of the proceedings thereon in the State of New York, all of which appear to have been admitted without objection. The assignment includes all the property of Griffin, the assignor, both real and personal.

It further appeared, by testimony which was undisputed, at

least uncontradicted, that the assignor was a merchant and manufacturer, doing business in the City of New York, and also doing business as a merchant in the city of Winona, in this State, through his agent, Ward Newman. That the assignment included the property in Winona, which was less than one-third of the whole property assigned. That the assignee immediately accepted the assignment, and took possession personally of all the property in New York, and proceeded to the execution of the trust. That on the 12th day of April, the day succeeding the execution and delivery of the deed of assignment, he mailed a letter to said Newman, directed to him at Winona, informing him that Griffin had assigned all his property to him, the Plaintiff, and directing Newman to hold the property in his possession, subject to his, the assignee's, further order. These facts appear from the record evidence before mentioned, and the depositions of Scott, the assignee, and Topping, his clerk.

The Plaintiff also called to the stand Newman, who testified that he was in possession of the property in Winona, at the time of the assignment. He produced the letter written by the assignee, before mentioned, and testified that he received it by due course of mail, on the 16th of April, 1861. That he acknowledged the receipt of it, and from that time until the goods were seized by the Defendant, on the 30th of the same month, under the attachment, held possession of the property as the agent of Scott, the assignee. And that he acted as Scott had directed him, retaining the property where it was, at the time he received notice of the assignment, until it was taken by the Defendant.

The cross-examination of this witness took a very wide range, extending over various business transactions during the six years he had been living at Winona, but was principally concerning his transactions previous to the assignment, while acting as agent for the assignor. He denied all knowledge of the assignment previous to the receipt of Scott's letter. He stated that he had transmitted to Scott the proceeds of all sales made after the 16th of April, when he received notice of the assignment; but he admitted that he had told no one of the change, and that he had made no change in his

business sign, which remained as before, "Ward Newman, Agent." He stated that he did business as before; but denied selling on credit after the assignment, or admitting to Welsh, the agent of the attaching creditors, that he sold on credit. It is unnecessary however to follow his testimony on cross-examination further in this place.

The testimony for the defence was chiefly confined to proving the acts and declarations of Newman; and, as regards the time at which these declarations were made: some were prior to the assignment, others again between the date of the assignment and the time of the levy under which the Defendant justifies, and others still were made after he had been deprived of the possession. Such as were made while acting as Griffin's agent merely for the sale of the property in the ordinary course of the business entrusted to him, were clearly inadmissible, as they could have no possible bearing upon the intention with which his principal afterwards' made the assignment; and such as were made after the assignment could not properly be admitted as affecting the question of the intent with which the assignor had previously made it. Not even the declarations of the assignor himself, made at such a time, could have been received for that purpose. *Burt vs. Mc-Kinstry,* 3 *Minn.*, 204; *Derby and Day vs. Gallup,* 5 *Minn.* 119. The only possible way in which Newman's declarations could properly have been admitted, would have been with a view to discredit his testimony in regard to the person for whom he was holding possession after the assignment.

And this, as is evident from the record, is the ground upon which the Court admitted these declarations. But the Court permitted the Defendant to go entirely too far. If the witness had made statements inconsistent with his testimony on the stand, the Defendant had the right to show that fact for the purpose of discrediting his testimony; but then he should first have directed the attention of the witness to each particular statement he desired to prove, in order to give him an opportunity for explanation. The Defendant attempted to lay this foundation for discrediting the witness. He asked him whether he had not stated to Ely and to Balcombe that the goods in his possession were owned by his son. The witness

admitted that he had so stated to these parties, but as the statements were made before the assignment, it does not appear how they could affect the credibility of his testimony in regard to whom he was holding possession for after the 16th of April, 1861. He was then asked whether he had not "stated to Mr. Welch that he was selling goods for cash and credit, the same as before [the assignment,]" and he answered that he had not. The Defendant then put the following question : " Didn't you state to Mr. Welch about the 25th of April, [1861,] that you knew of no assignment having been made ; that none had been made ; and that you knew no reason why the debt had not been paid in New York ?" The witness denied making any such statements to Welch. He was further asked whether he had not told the Defendant on the 31st of May, 1861, when other of the goods were attached by other creditors, that the goods in what was designated as the centre store, belonged to his son, and he admitted that he had so stated. These were all the statements or declarations to which the attention of the witness was called.

But when witnesses were afterwards called to prove these statements, they were permitted to testify not only to those which Newman had denied making, but also to those which he had admitted, and even to statements and conversations to which his attention had never been called, while on the stand. King, the Defendant, was allowed to testify to what Newman said about some of the millinery goods belonging to his wife, and what he also said and did about certain other goods in a room up stairs which Newman claimed did not belong to the stock. These acts and statements could not have been received as evidence of the intent with which Griffin had previously made the assignment ; nor could they be admitted to discredit Newman's testimony because the proper predicate had not been laid. Newman had not been asked concerning them while he was being examined. So too in regard to Welch, who, after testifying to the declarations which Newman had denied making to him, was allowed not only to detail other parts of the conversation to which Newman's attention had not been directed, but also a similar conversation had with him at another and different time.

But in addition to this the Defendant called another witness, Flint, who was permitted to testify to the acts, declarations and omissions of Newman during the three months immediately preceding the assignment, as well as to various matters that he had said, and done, or omitted to say or do afterwards.

We think that none of Flint's testimony as to the declarations of Newman, should have been admitted. We have stated above that the sole ground on which these declarations could have been received, was for the purpose of discrediting Newman's testimony concerning the person for whom he was holding possession after notice of the assignment, and that Newman's attention should first have been called to the particular statements which the Defendant desired to prove. But so far from pursuing this course in regard to the statements, declarations or conversation made to Flint or in his presence; the name of Flint does not appear to have been mentioned while Newman was being examined. And as to the acts and omissions to which Flint testified, they could not affect the Plaintiff's title, if done or admitted prior to the assignment; because, at that time, he and Newman had no connection with each other; nor could the Plaintiff be prejudiced by anything Newman might have said, done or admitted afterwards, except upon the sole ground that Newman was then acting as his agent; and even then he would be bound by such acts only as were within the scope of the agency. So far as the issues of this case are concerned, Newman, after he received notice of the assignment, must be regarded either as the agent of Griffin, the assignor, or of Scott, the assignee. If he was the agent of the assignor, his acts or declarations could not affect the validity of the assignment, because the title of the assignee could not be vitiated by the acts or declarations of the assignor himself, unless the assignee was privy thereto.

But if he was during that time acting as agent of the assignee, then the question of delivery is settled; for the possession of the agent is the possession of the principal, and the assignee could not have been in possession unless the delivery of this property under the assignment was complete.

We are inclined to the belief that the testimony of Flint

was offered with a view also of showing that Newman was in some way interested in the property attached. That such was one of the objects at least, may be inferred from the character of the testimony, and from the fact that the Court, at the request of the Defendant, charged the jury " that if Newman was in anywise a partner in relation to said property, the assignment by Griffin was a fraud upon the partnership creditors." The testimony however was equally inadmissible for this purpose. There was no such question at issue in the pleadings. Both parties claimed title through the assignor. The Defendant justified on the ground that it was Griffin's property and he would not be permitted, without an allegation to that effect to prove that it belonged in whole or in part to any one else. *McClung vs. Bergfeld*, 4 *Minn.*, 148.

We think that the admission of testimony tending to show title in Newman, or any other stranger to the attachment under which the Defendant justified, was erroneous. That the charge of the Court on this point, whether right or wrong as an abstract proposition, should not have been given under the issues made in this case. And that both the testimony and the charge tended to lead the jury from the real points at issue, and were prejudicial to the Plaintiff.

The order denying a new trial is reversed, and a new trial granted.